[Crim. No. 20181. Feb. 24, 1978.]

THE PEOPLE, Plaintiff and Respondent, v.
WILLIAM HENRY SEWELL, Defendant and Appellant.

640

**COUNSEL**

Paul Arthur Turner, under appointment by the Supreme Court, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, William R. Pounders and Roger W. Boren, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**RICHARDSON, J.**—This case raises the question whether by application of Penal Code section 669 multiple life sentences which have been imposed by different states merge and become concurrent sentences. (All statutory references are to the Penal Code.)

During June 1973 defendant, having escaped from the Maryland State Prison while serving a life term, drove with three other men to Los Angeles where they intended to sell stolen musical instruments in order to buy narcotics for resale on the East Coast. Their plans failed and after a week the group decided to return east with the exception of defendant who, fearing apprehension in Maryland, was to remain in Los Angeles. During the early morning hours of July 8, 1973, defendant shot and killed his three companions while they slept. He fled to Maryland that night and was later apprehended there during his commission of another crime.

Defendant was convicted in California of three counts of murder in the first degree (§ 187) for which he was sentenced to three concurrent terms of life imprisonment to be served consecutively with a life sentence which he had previously commenced serving in Maryland. Defendant, presently incarcerated in Maryland, contends that section 669 requires that his California sentences be merged and run concurrently

with his Maryland sentence. We agree and will order that the judgment be so modified.

Section 669 provides in relevant part: "When any person is convicted of two or more crimes, whether in the same proceeding or court or in different proceedings or courts, and whether by judgment rendered by the same judge or by different judges, the second or other subsequent judgment shall direct whether the terms of imprisonment or any of them to which he is sentenced shall run concurrently, or [consecutively] . . . *provided, however, if the punishment for any of said crimes is expressly prescribed to be life imprisonment, whether with or without possibility of parole, then the terms of imprisonment on the other convictions, whether prior or subsequent, shall be merged and run concurrently with such life term.*" (Italics added.)

It is clear that if defendant's first conviction resulting in a life term had occurred in California rather than in Maryland, his life sentence for the 1973 murders would merge into a single term of life imprisonment by operation of section 669. (*In re Rye* (1957) 152 Cal.App.2d 594, 595 [313 P.2d 914] [multiple life terms merge into a single life sentence]; *People* v. *Holman* (1945) 72 Cal.App.2d 75, 100 [164 P.2d 297] [defendant may not be sentenced to 22 consecutive life sentences for 22 murders; all terms merge into a single life sentence].) The central issue is whether defendant may be subjected to consecutive life sentences, despite the provisions of section 669, because his first life sentence was imposed by another state.

Initially, we note that nothing in the language of section 669 suggests that both life terms must be imposed by *California* courts before their merger becomes mandatory. Rather, the policy implicit in section 669 indicates that the Legislature deliberately chose to leave discretion in the California parole authorities to determine when a prisoner should be released once the minimum seven-year sentence for a single life term has been served. This legislative policy vesting discretion in the parole authorities would be defeated by an interpretation of section 669 which upholds the imposition of consecutive life sentences in the present case. The defendant, for example, may serve seven years or more in a Maryland prison and then be released by that state's authorities because he is considered rehabilitated or no longer a danger to society. If the Maryland sentence is not recognized, California prison authorities would have no choice but to imprison defendant here for an additional seven years. Parole authorities would lack discretion to release defendant until another minimum seven-year sentence had been fully served even if they

concluded that further imprisonment could serve no useful purpose. This does not appear to have been the intent of the Legislature in drafting section 669.

The opposing interpretation, that defendant's California term runs concurrently with his Maryland term during his Maryland imprisonment, preserves the options of the parole authorities. If defendant is released on parole by Maryland authorities prior to serving the minimum life sentence under California law, he would be required to serve at least the balance of the minimum term in a California prison. Furthermore, even after the expiration of his minimum term, California parole authorities would retain the prerogative of continuing defendant's incarceration for such indefinite further period as they deemed necessary.

The provisions of section 3046 provide, in relevant part, that "No prisoner imprisoned under a life sentence may be paroled until he has served at least seven calendar years." This in no way suggests that the seven years must be served in a California prison. In *In re Stoliker* (1957) 49 Cal.2d 75 [315 P.2d 12], we held that a California prisoner had a right to be transferred from California to United States prison authorities so that he could serve his California sentence concurrently with a federal term while incarcerated in a federal penitentiary. Because the case did not involve a life prisoner the provisions of section 3046 were not directly invoked, but *Stoliker* is persuasive authority for the general proposition that a prisoner may serve his California term while confined in another jurisdiction. (See also *In re Satterfield* (1966) 64 Cal.2d 419, 421 [50 Cal.Rptr. 284, 412 P.2d 540]; *In re Patterson* (1966) 64 Cal.2d 357, 361 [49 Cal.Rptr. 801, 411 P.2d 897]; *In re Harris* (1960) 60 Cal.2d 878 [36 Cal.Rptr. 468, 388 P.2d 700]; § 2900.)

Sections 669 and 3046 may be harmonized by analogy to *Stoliker.* Thus, a prisoner like defendant who is under a California life sentence while imprisoned in another jurisdiction will be eligible for parole by California authorities after he serves the seven-year minimum term in the prison of *either* jurisdiction. We think it fair to conclude that if the Legislature had wished it otherwise it could easily have required that the seven-year minimum term be served within a *California* prison. The legislative failure to do so strongly suggests that such was not its intent.

The People have argued that it would be inappropriate to apply the merger provision of section 669 to the out-of-state prison sentence

because the prison facilities of another jurisdiction may be too comfortable and not sufficiently punitive. This argument ignores the fact, heretofore noted, that if upon defendant's custodial return to California, following the expiration of seven years' confinement in another jurisdiction, the California prison authorities conclude that he is not fully rehabilitated they retain full discretion to require that he serve additional time in California. Application of section 669 to the Maryland term does not reduce defendant's maximum term, but only serves to allow California parole authorities discretion, if they choose to exercise it, to release offenders earlier than the expiration of the aggregate minimums of consecutive life terms.

We, of course, are not concerned with the wisdom of sections 669 and 3046, but we do confront a problem of statutory interpretation. ■ It seems evident that the policy behind the legislation is that, no matter how heinous the offense, parole authorities are vested with discretion to release a defendant after he has served a seven-year term, thus avoiding consecutive life sentences resulting in multiple seven-year mandatory terms. No reason suggests itself why this policy must be ignored simply because a defendant's successive crimes have been committed in two different states.

A somewhat analogous statute, former section 2900.5, permitted credit for *pretrial* time served in "any city, county, or city and county jail." (As amended in 1976, present § 2900.5 expanded the list of facilities recognized by substituting "including but not limited to any time spent in a jail, camp, work furlough facility, halfway house, rehabilitation facility, hospital, prison or similar institution" for "in any city, county, or city and county jail.") Recently in *In re Watson* (1977) 19 Cal.3d 646 [139 Cal.Rptr. 609, 566 P.2d 243], we allowed a defendant credit for 285 days of pretrial time served in a Texas jail resisting extradition to California. While *Watson* is factually distinguishable in a number of respects, it does suggest that as a general principle a defendant may be entitled to credit on a California sentence for time served in other states.

We are unable to adopt the People's reliance on *In re Gullatt* (1968) 69 Cal.2d 395 [71 Cal.Rptr. 676, 445 P.2d 292], for it is not helpful precedent. The defendant in *Gullatt* was on parole from the California prison system when he pleaded guilty in a federal court to armed bank robbery. His federal judgment contained no recommendation or direction as to whether the sentence should run concurrently or consecutively with the prior state sentence. The defendant served more than five years

on the federal sentence before he was returned to state prison. Our limited holding in that case was to the effect that the department of corrections acted properly in declining to give him credit for the federal time served. The fact that a federal judgment does not specify that the sentence is to run consecutively with a prior state sentence raises no presumption of concurrency. In *Gullatt* we further noted that even in cases in which the federal court expressly recommends that its sentence run concurrently with a prior state sentence, the recommendation is surplusage under United States law because the federal sentence is treated as "consecutive with the state sentence if the United States Attorney General does not designate the state prison as the place where the federal sentence is to be served." (*Id.*, at p. 397.) Since *Gullatt* involved sentences of varying lengths, none of them life terms imposed or ordered to be served consecutively or concurrently, no inference may be drawn from its holding as to the treatment of two life sentences which by the plain wording of section 669 must be served concurrently.

From all of the foregoing, we conclude that defendant's California life term merged with his Maryland life term and will be served concurrently during his Maryland imprisonment pursuant to section 669.

We find no merit in defendant's contention that the trial court abused its discretion in refusing to grant him a one-month continuance of the trial date. The prosecution fully complied with a pretrial discovery order by permitting the deputy public defender assigned to the case to inspect and copy all relevant materials at the time of the preliminary hearing. Defendant later sought, and was granted, pro. per. status. In order to prevent intimidation of prosecution witnesses, defendant was denied access to some of the materials previously furnished to the public defender. Through oversight and inadvertence these materials were not made available to a different public defender subsequently assigned to try defendant's case until after the jury had already been selected. At that time the defense requested a one-month continuance to allow defense investigators to explore investigatory leads in the Baltimore, Maryland area which were revealed in the materials. The court granted a one-week delay of trial but denied any longer continuance.

Defendant argues that the delay in compliance with the discovery order amounted to prosecutorial suppression of evidence and that the denial of his request for a continuance was prejudicial. We disagree. While there may have been some lack of communication between

successive deputy public defenders, much of the documentation had been submitted to the original defense counsel. ▮ A defendant must show that he was prejudiced by noncompliance with a discovery order in order to obtain reversal of his conviction. (*People* v. *Reyes* (1974) 12 Cal.3d 486, 501-502 [116 Cal.Rptr. 217, 526 P.2d 225].) Defendant has failed to demonstrate that the one-week continuance was inadequate to meet any new revelations contained in the belatedly discovered documents. Under these circumstances, he is not entitled to a reversal.

Defendant additionally contends that a motion to dismiss pursuant to section 995 should have been granted and that prejudicial prosecutorial misconduct occurred. We have considered defendant's additional arguments and have found they lack merit.

▮ Defendant correctly contends that his judgment must be modified by striking from the sentence the punishment imposed pursuant to section 12022.5. The People have conceded that under *People* v. *Walker* (1976) 18 Cal.3d 232, 243 [133 Cal.Rptr. 520, 555 P.2d 306], no effect can be given to the jury's finding on use of a firearm since it is impossible to impose a consecutive sentence for use of a firearm when defendant is already serving a life term.

The judgment is ordered modified to reflect that defendant's California life sentence is to run concurrently with his Maryland sentence and to strike therefrom that portion of the sentence providing for additional punishment under section 12022.5. As so modified, the judgment is affirmed.

Bird, C. J., Tobriner, J., Mosk, J., Clark, J., Manuel, J., and Newman, J., concurred.