[No. B007409. Second Dist., Div. Seven. Dec. 20, 1984.]

FRANK PADILLA MENDIBLES, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

**Counsel**

Donald Feinberg for Petitioner.

No appearance for Respondent.

Robert H. Philibosian, District Attorney, Harry B. Sondheim, Kenneth R. Freeman and Dirk L. Hudson, Deputy District Attorneys, for Real Party in Interest.

## OPINION

LILLIE, P. J.—By way of petition for writ of prohibition or mandate, Frank Mendibles has challenged an order which provides for the physical examination of three minor females by a medical expert for the prosecution in a lewd conduct case. We issued alternative writ and order to show cause.

Petitioner is charged with nine counts of forcible lewd conduct with a child under age 14 between October 1981 and January 1983. (Pen. Code, § 288, subd. (b).) The alleged victims are the 3 daughters, ages 10, 12, and 13, of petitioner's former girlfriend, with whom he was living at the time. On September 4, 1984, the date set for trial, the prosecution made an oral request for physical examination of the three children by a female medical expert utilizing a colposcope, a device used to detect (by magnification) sexual trauma in the lower genital tract. The prosecution's motion for appointment of this expert was granted, as was petitioner's motion to have an independent medical observer, a male, present at the examination. The People later cancelled the examination, but renewed their request orally at a hearing on September 17, and argued that to allow petitioner to have a male medical observer in the room during the examination would be upsetting to the minors. The prosecutor suggested either that the observer be a female or that a two-way mirror be utilized so a male medical observer would not be in the same room with the examining physician and the minors. Petitioner informed the court that he had been unable to locate a female medical expert familiar with a colposcope who was willing to assist the defense; the expert he wished to retain was Dr. Richard Nalick, an associate professor of obstetrics and gynecology at U.S.C. school of medicine, who uses the colposcope on a daily basis in his work, and who does not think the use of a two-way mirror would be a satisfactory way to observe the examination. The court indicated it would allow petitioner to use Dr. Nalick and if he is not available, petitioner could use someone else. The People proposed to set up the examination sometime during trial, "Perhaps Friday or the early part of next week Monday. . . . Perhaps on the weekend." After further discussion of petitioner's concern with the timing of the examination in relation to trial, the court told the prosecution: "Okay. Let us know and then we will arrange it with [petitioner's attorney] to set it up." Petitioner requested a two-day delay of trial until Wednesday, September 19, in order to obtain some subpoenaed records. The court replied: "Then you have more time to work on your arrangements with the doctors. All right. We will trail it until Wednesday. [¶] When do you people propose you people can get together on the doctor?" The prosecution replied: "Yes, your honor, we will."

On Wednesday, September 19, petitioner made application for appointment of Dr. Nalick and for his observation of the examination to be made

by the People's expert and for his (Dr. Nalick's) examination of the three children at the same time. On the hearing the court stated that it had not granted the request for an examination by petitioner's expert but had said he could observe through a two-way mirror. Petitioner argued that Dr. Nalick would not be able to observe anything meaningful by that arrangement because it would be necessary for him to actually look through the colposcope to see that which the People's expert was observing and to allow him to interpret the photographs taken through the colposcope. The court denied the request to allow the defense expert to examine the witnesses on petitioner's behalf. It also denied petitioner's request for a continuance of trial until after the examination to enable him to review the results of the examination and adequately prepare for trial. Defense counsel then stated "Then, if the court is not going to give us an opportunity to have a doctor present to perform an examination, if the court will not permit us an opportunity to deal with that evidence that could have been obtained more than two years ago and up until the time of trial and was postponed from last week to this week so it can be done in the middle of trial, I am going to ask the court for two days to prepare a writ to the Court of Appeal to assure my client his right to a fair trial." The court agreed to give him two days, and set the trial for Monday, September 24.

The People then informed the trial court that a two-way mirror did not exist at the proposed examination site, and urged that petitioner find a female medical expert so there would be no need to set one up, explaining: "Since one doesn't exist, and I am not sure how we can arrange that in the time that we have. [¶] It may very well be that if there is a female in there, that there will be an opportunity to look through the same eyepiece of the colposcope at the time just after [our expert] takes the pictures. I don't know." Petitioner again stated he had been unable to find a female medical expert experienced with colposcope technique who was willing to aid the defense, concluding "Are we now not only to have a doctor not able to make an examination, but we are not going to be able to use the only doctor we have been able to obtain who has expertise?" The court ordered: "If a two-way mirror is not available, then I will allow a female defense expert to observe. That is the order."

Two days later, on Friday, September 21, the instant petition was filed seeking an order to compel the superior court to appoint Dr. Nalick to observe the examination of the complaining minors by the prosecution's expert and to carry out his own independent examination at the same time and place on behalf of petitioner. On the same day (Sept. 21), we ordered all proceedings in the superior court stayed and requested the People file opposition to the petition on or before Tuesday, September 25 to aid us in determining the propriety of the court's order with respect to the proposed

examination. On September 25 the People, instead of filing the requested opposition, informed this court by letter that the issue of the appointment of Dr. Nalick to observe the physical examinations of the minors had been rendered moot inasmuch as these examinations had been conducted on the morning of Friday, September 21, the same day petitioner filed his petition with this court but prior to our order of that date staying all proceedings, and requested an extension of time to file their opposition to the petition. No prior notice of this examination was given to petitioner or to the trial court thus, no defense expert, male or female, was present to observe the examinations.

Given the foregoing occurrences, this court granted the requested extension of time and ordered the People to address the following issues in their opposition: (a) When were they first placed on notice of petitioner's intention to file a petition in this court challenging the proposed examination? (b) Why should the People not be prohibited from introducing evidence obtained as a result of said physical examination? Opposition was duly filed, and in response thereto petitioner also raised certain issues; these concerned the legality of the authorization by the court of the physical examinations of the three minors, and the manner in which they were conducted while he was in the process of seeking relief from this court by way of petition for a writ. After consideration of the briefs of the parties and the superior court file, including the reporter's transcript of oral proceedings had on September 17 and September 19, we ordered respondent superior court to show cause why the People should not be prohibited from introducing at trial evidence obtained as a result of said physical examinations, or why such other relief as may be appropriate and just should not be granted.

This, of course, was not the relief prayed for in the petition filed with this court on September 21, 1984. On the record as it then existed petitioner prayed for alternative relief he then deemed to be appropriate, including dismissal of the criminal proceedings. While petitioner argued for the cancellation of the proposed physical examinations of the minors on grounds they are unlikely to add anything to the examinations conducted in January 1983,[1] which revealed no evidence of sexual trauma, and may cause damage to the children, the alternative relief prayed for in his petition was mandate to compel respondent superior court to (1) appoint his medical expert (Dr. Nalick) to observe the examinations to be conducted by the People's expert, to make his own examinations at the same time and place, and to assist the defense during trial; and (2) order the examinations to be conducted and the results be made available prior to trial. However, the circumstances drast-

---

[1]After the occurrence of the last alleged offense (Jan. 1983) physical examinations of the female victims were conducted; the results showed no evidence of sexual trauma.

ically changed when the People proceeded to have the examinations made pending the disposition of this writ proceeding, thus the relief prayed for in the petition would no longer be appropriate. In addition, there appear to be various discrepancies in the People's opposition between their recitation of procedural events and those events set up by petitioner. Further, the People have raised numerous factual issues by their assertions relating to their conduct on September 21, 1984, and subsequent thereto, not answered to our satisfaction by either petitioner or the People.

■ On the present state of the record, we are unable to resolve the following disputed factual questions which are essential to a proper disposition of this matter: (1) Did the trial court's order require the People to notify petitioner and/or the trial court of the date and time of the examinations to allow petitioner to have a medical observer present? (2) If so, was the People's failure to provide such notification inadvertent, or was it willful and in bad faith? (3) What, if any, prejudice did petitioner suffer by virtue of his failure to receive prior notice of the examinations? (4) If any prejudice was suffered by petitioner, can it be cured? Thus in consideration of the relief prayed for in petition for writ of prohibition/mandate filed September 21, 1984, which includes "such other and further relief as may be appropriate and just," and petitioner's request in his response to opposition to petition filed October 15, 1984, that "this court take appropriate action which will prevent the People from using the results" of the examinations made on September 21, 1984, and prayer "that his Petition be granted and that the appropriate orders be issued," the changed circumstances resulting from the physical examinations conducted by the People on the day the petition was filed, and the preference given to respondent superior court as the forum for taking evidence and resolving factual issues (*People* v. *Coyer* (1983) 142 Cal.App.3d 839, 845 [191 Cal.Rptr. 376]), we deem it appropriate to order peremptory writ of mandate to issue for the purpose of ordering respondent superior court to hold an evidentiary hearing for resolution by it of the foregoing factual issues.

■,■ Should the trial court determine after such hearing that its order[2] was violated by the People, it must then turn its attention to consideration of imposition of an appropriate sanction against the People. Our state has a policy that the victim of a sex crime should not be unnecessarily subjected

---

[2]While the order made by the trial court at the request of the People is referred to as a discovery order, it is not one in the true sense. Inasmuch as the three female minors are the People's witnesses, the mother of the minors consented to the physical examinations and the contemplated colposcope examination was not invasive (the probability that an invasive examination would destroy evidence is not here involved), it appears that in the first instance the People were under no duty to obtain an order of the court to have their own witnesses examined. However, having sought such an order they are bound by its terms and conditions.

to further harassment or distress in criminal proceedings against her alleged violator (*People* v. *Mills* (1978) 87 Cal.App.3d 302, 307 [151 Cal.Rptr. 71]); such a policy dictates that the child victims here alleged should not be forced to submit to another (a second colposcopic) examination which could be observed by petitioner's expert in compliance with the order. However, in the exercise of its discretion the court may consider a wide range of sanctions which our courts have imposed in response to prosecutorial violation of discovery orders. In a case in which the prosecution's conduct is inadvertent, a court may simply give the petitioner an opportunity to meet the new evidence by granting a continuance (*People* v. *Reyes* (1974) 12 Cal.3d 486, 502 [116 Cal.Rptr. 217, 526 P.2d 225]); or it may allow petitioner to comment on the People's refusal to cooperate with petitioner's expert as to observation of the examination. (*People* v. *Browning* (1980) 108 Cal.App.3d 117, 125 [166 Cal.Rptr. 293].) The court can exclude the results of the examinations from evidence (*People* v. *Hitch* (1974) 12 Cal.3d 641, 652 [117 Cal.Rptr. 9, 527 P.2d 361]) or make a finding against the prosecution and in favor of petitioner as to the results of the examinations. (*People* v. *Peinado* (1976) 67 Cal.App.3d Supp. 1, 11 [136 Cal.Rptr. 845].)

■ However, even in instances in which prosecutorial misconduct is willful and apparently motivated by bad faith, the extreme sanction of dismissal is rarely appropriate unless a defendant has established prejudice by the failure of the People to comply with the discovery order (*People* v. *Sewell* (1978) 20 Cal.3d 639, 646 [143 Cal.Rptr. 879, 574 P.2d 1231]) and the prejudice cannot be otherwise cured (*People* v. *Reyes* (1974) 12 Cal.3d 486, 502 [116 Cal.Rptr. 217, 526 P.2d 225]); lesser sanctions must be utilized by the trial court, unless the effect of the prosecution's conduct is such that it deprives defendant of the right to a fair trial. (*Derek L.* v. *Superior Court* (1982) 137 Cal.App.3d 228, 235 [186 Cal.Rptr. 870].)

Let the peremptory writ of mandate issue ordering respondent superior court to hold an evidentiary hearing in accord with the views hereinabove expressed and to resolve the issue of whether or not the People violated its order and, if so, whether or not the People should be precluded from introducing evidence obtained as a result thereof or should suffer imposition of any such other sanction as it deems just and proper.

Thompson, J., and Johnson, J., concurred.