Kenneth A. BIANCHI,
Petitioner–Appellant,

v.

James BLODGETT, Superintendent, Washington State Penitentiary; Department of Corrections of the State of Washington; Department of Corrections of the State of California, Respondents–Appellees.

No. 89–35816.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 5, 1990.

Decided Jan. 31, 1991.

Paul J. Lyon, Walla Walla, Wash., for petitioner-appellant.

John M. Jones, Deputy Atty. Gen., Olympia, Wash., Sharlene A. Honnaka, Asst. Atty. Gen., Los Angeles, Cal., for respondents-appellees.

Before SCHROEDER, FLETCHER and FARRIS, Circuit Judges.

FLETCHER, Circuit Judge:

Kenneth Bianchi appeals the district court's dismissal without prejudice of his petition for habeas corpus.

## BACKGROUND

On October 19, 1979, petitioner pleaded guilty to two counts of murder and was sentenced to two consecutive life terms by the Superior Court of the State of Washington for Whatcom County. On October 22, 1979, in the Los Angeles County Superior Court, petitioner pleaded guilty to five counts of murder, one count of conspiracy to commit felonies, and one count of sodomy. Petitioner was sentenced by the California court to prison for life as to all counts except sodomy, for which he received a five-year term. The California judge ordered the various California sentences merged into one life sentence for murder, which in turn, under California law, he ordered merged into the sentences imposed by the State of Washington.

Both pleas were entered pursuant to a single plea agreement executed by the petitioner, his attorneys from both states, and the authorities of both states. In exchange for his guilty pleas petitioner received dismissal of other charges, a maximum potential sentence of life rather than death, the possibility of parole, and the possibility of serving his California sentence first in California (as petitioner desired). The last benefit concerning the location of confinement was conditioned on the petitioner testifying fully and truthfully in the trial of Angelo Buono, with whom he had committed the Los Angeles murders.

The plea agreement specified that the two Washington life sentences were to be consecutive. It did not so specify as to the California sentences, but consecutive life sentences were not available under the law of California at that time. Act of 1872, Cal.Penal Code § 669, *as amended* 1941 Cal.Stat. c. 742, p. 2262, § 1 and 1943 Cal. Stat. c. 219, p. 1122, § 1; *People v. Sewell,*

20 Cal.3d 639, 574 P.2d 1231, 143 Cal.Rptr. 879, 880 (1978). The agreement likewise did not expressly address the relation between the two states' sentences. Paragraph 9B of the plea agreement makes clear, however, that the parties anticipated that the two sentences would not be perfectly overlapping. It describes the outcome should the defendant fail to testify in Buono's trial as agreed, and indicates that "he shall be returned to the State of Washington to complete the sentence he received [there] ... prior to returning again to the State of California to complete the sentence he received in Los Angeles."

The California sentencing court did not use the words "concurrent" or "consecutive" in its judgment. The judge announced orally that "[b]y operation of law, section 669 of the Penal Code, all of the subsequent counts are merged in (sic) the matter of law. And in the life sentence ordered on Count VI of the information, the first count in which you pleaded guilty, the sentences are also [as] a matter of law merged into the sentence imposed in the State of Washington." The written sentencing form likewise indicates that all of the California sentences were merged into Count 6 and that the California life sentence was then merged into the sentences imposed by the State of Washington.

Following the trial of Angelo Buono, the prosecutor made a formal determination that the petitioner had not testified fully and truthfully against Buono. The trial judge in Buono's case reviewed and affirmed that determination on January 9, 1984, and ordered the petitioner remanded to the State of Washington to serve his sentence as specified in the plea agreement.[1] On February 1, 1984, the California Department of Corrections filed a detainer with the Washington Corrections Center indicating that Bianchi was "wanted by the California Department of Corrections ... [because he had been] released to [Washington] for the service of concurrent sentences between California and [Washington]." The detainer ensures that if Washington authorities ever release Bianchi from their custody, he will be turned over to California to complete the California life sentence. Thus, both states would have to grant parole or clemency in order for Bianchi to be released from custody.

Bianchi argues that the premise of the detainer is contrary to the California sentence, which he contends was neither concurrent nor consecutive. According to petitioner, the effect and intended effect of the California sentencing judge's order that the California life sentence be merged into the Washington sentences was that the California sentence would be precisely satisfied by the Washington sentence. In petitioner's view, the California sentence ceased to exist as a separate basis for detaining him, leaving the State of Washington as the sole authority with power to grant parole, clemency or otherwise terminate his sentence.[2] He asserts in his petition for habeas corpus that California, by way of the detainer, seeks to impose a sentence on him greater than that allowed by the terms of the plea agreement and the California sentencing court; that the plea agreement has thus been breached by both California and

1. The petitioner has not challenged that determination and it is not before the court in the present petition.

2. While we cannot and do not reach the merits of petitioner's arguments, he may benefit from our observation that he relies erroneously on the current version of Cal.Penal Code § 669, which is inapplicable to crimes committed prior to January 1, 1979. (The California murders to which Bianchi pled guilty took place in 1977 and 1978.) This error appears to be the genesis of petitioner's confusion over the meaning of the term "merged" in his sentence and under California law. The version § 669 applicable to the petitioner provided in relevant part:

When any person is convicted of two or more crimes ... if the punishment for any of said crimes is expressly prescribed to be life imprisonment, whether with or without the possibility of parole, then the terms of imprisonment on the other convictions, whether prior or subsequent, shall be *merged and run concurrently* with such life term. (emphasis added)

Act of 1872, Cal.Penal Code § 669, *as amended* 1941 Cal.Stat. c. 742, p. 2262, § 1 and 1943 Cal.Stat. c. 219, p. 1122, § 1 (further amended 1978, 1985, 1987 and 1988). For a complete history of the section and its amendments, *see Historical Note*, Cal.Penal Code § 669 (West 1988).

Washington; and that his guilty pleas in both states are therefore void because he was not fully advised of the consequences of his pleas thereby violating his rights under the Due Process Clause of the Fourteenth Amendment.

Petitioner attempted to challenge the detainer using the procedures provided by the Interstate Agreement on Detainers. However, he was informed by the Washington Department of Corrections that the Agreement and its procedures are inapplicable because they apply only to untried charges. *See* Cal.Penal Code §§ 1389–1389.8; Wash. Rev.Code Ann. § 9.100.010. Petitioner has not raised any of the claims set out in his habeas corpus petition in either the Washington or California state courts. The district court dismissed the petition without prejudice because it challenged the judgments of two different states in violation of Rule 2(d) of the Rules Governing Section 2254 Cases, 28 foll. § 2254 Rule 2(d). The petitioner filed a timely notice of appeal and we issued a certificate of probable cause to appeal pursuant to 28 U.S.C. § 2253. We have jurisdiction to review the district court's order and judgment dismissing the habeas corpus petition under 28 U.S.C. § 1291.

## DISCUSSION

■■ The decision whether to grant or deny a petition for habeas corpus is generally reviewed de novo. *Norris v. Risley*, 878 F.2d 1178, 1180 (9th Cir.1989). To the extent that it is necessary to review a district court's findings of fact, the clearly erroneous standard applies. *Id.* Since the dismissal in this instance rests on procedural grounds which are strictly legal in nature, we review the district court's decision de novo.

■ Rule 2(d) of the Rules Governing Section 2254 Cases, 28 foll. § 2254 provides:

A petition *shall be limited* to the assertion of a claim for relief against the

judgment or judgments of a single state court (sitting in a county or other appropriate political subdivision). If a petitioner desires to attack the validity of the judgments of two or more state courts under which he is in custody or may be subject to future custody, as the case may be, he *shall do so* by separate petitions.

28 foll. § 2254 (emphasis added). The language of the Advisory Committee Note related to Rule 2(d) likewise indicates that the rule is mandatory in nature:

Subdivision (d) provides that a single petition may assert a claim only against the judgment or judgments of a single state court (*i.e.*, a court of the same county or judicial district or circuit).... A claim against a judgment of a court of a different political subdivision *must be raised by means of a separate petition*. (emphasis added)

Bianchi does not dispute that the petition, as it is framed, challenges the judgments of both California and Washington. While the petitioner arguably could have pursued the principal relief he seeks—removal of the detainer—by challenging only the California judgment, he has not chosen to do so, and the district court properly found that absent an indication by the petitioner that he elected to pursue the claim against one or the other state, the court could not substitute its own judgment on that question. Petitioner offers two lines of argument as to why dismissal was not required under Rule 2(d).

■■ First, as he did in the district court, petitioner cites a number of authorities indicating that he can challenge his California conviction in the district court in the location of his confinement (i.e., Western Washington), that he must name his Washington custodian as respondent, and that he may also name the California attorney general. While these three propositions are undoubtedly true,[3] they are sim-

---

**3.** *See Braden v. 30th Judicial Circuit Court of Ky.*, 410 U.S. 484, 495, 499 n. 15, 93 S.Ct. 1123, 1129, 1131 n. 15, 35 L.Ed.2d 443 (1973) (holding that a petition challenging the validity of a fu-

ture custody of another state can be filed either in the district of confinement or the district of the challenged judgment and discussing requirement that the custodian be named as respon-

ply irrelevant to the applicability and effect of Rule 2(d), which concerns neither the location of the petition nor the parties to be named, but the multiplicity of jurisdictions whose judgments are being challenged in a single petition. Petitioner makes a related argument that because California appeared in the case (for purposes of moving to dismiss on exhaustion and Rule 2(d) grounds), it "named itself a real party in interest" and thus waived the limitations of Rule 2(d). This argument is equally unavailing. Again, petitioner erroneously confuses the capacity to have two different states as respondents with the capacity to challenge the separate judgments of two states in one petition.[4]

Second, the petitioner argues that judicial efficiency militates against requiring him to file two separate petitions and to exhaust his remedies against each state separately. He suggests that he may be subjected to conflicting results in the two state court systems, and will be unable to obtain relief from the "combined actions" of Washington and California from either state individually or from separate habeas actions which challenge the judgment of only one state. Finally, he asserts that any eventual state relief would not bind the action of the other state in the same manner and with the same certainty as a feder-

al writ of habeas corpus. Neither the language of Rule 2(d), nor any case law cited by the petitioner, suggests that these arguments provide a basis for exception to that rule.

We note as an initial matter that to the extent that prejudice could result from requiring exhaustion of petitioner's remedies in both state court systems, it would not arise from the operation of Rule 2(d), which does not even speak to exhaustion of state remedies but simply requires as a procedural matter that the judgment of only one jurisdiction be challenged in each federal habeas petition.[5] Whether the petitioner has adequately exhausted his state remedies and whether he presents one of those " 'rare cases where exceptional circumstances of peculiar urgency are shown to exist' " such that exhaustion is not required, *Rose v. Lundy*, 455 U.S. 509, 515–17, 102 S.Ct. 1198, 1201–02, 71 L.Ed.2d 379, quoting *Ex parte Hawk*, 321 U.S. 114, 117, 64 S.Ct. 448, 450, 88 L.Ed. 572 (1944), or can demonstrate "the existence of circumstances rendering [State corrective] process ineffective to protect [his rights]," 28 U.S.C. § 2254(b), is not before us.[6] The district court dismissed the petition based solely on Rule 2(d) and we therefore address ourselves to petitioner's arguments regarding judicial inefficiency, potential

---

dent); 28 foll. § 2254, Rule 2(b) (requiring petitioner challenging future custody to name the officer having present custody as well as the attorney general of the state in which challenged judgment was entered).

**4.** Petitioner's determination to attack both judgments appears to arise in part from his mistaken notion that in order to prevent enforcement of the detainer, he must somehow restrain Washington officials in addition to obtaining relief from California. Washington, however, has no independent interest in the detainer, and, indeed, could not enforce a California detainer which was based on a sentence determined to be void by a California or federal court. Put more simply, if the petitioner were to prevail against California, the detainer could no longer exist since there would be no additional sentence to serve in California and no basis for requesting Washington to detain the petitioner on California's behalf.

**5.** We note as well that it is the states—and not Bianchi—who are likely to be prejudiced by the

requirement that petitioner separately exhaust his remedies in each state. Prejudice could only arise if one state granted relief while the other did not. If both states grant relief then there is no need for a federal habeas petition and nothing to be prejudiced; if neither grants relief, petitioner would be in the same position he is now. However, if one state invalidates the joint plea agreement, Bianchi will have an additional—and quite persuasive—argument on federal habeas that it is unconstitutional for the remaining state to enforce half of an interjurisdictional plea agreement which he entered into as a package deal.

**6.** Although the magistrate's "Report and Recommendation" which was adopted by the district court noted that Bianchi had not exhausted his California remedies and would be required to do so before presenting his claims in federal court, even if he properly reframed a petition directed at the judgment of only one state court as required by Rule 2(d), the district court did not rely on petitioner's failure to exhaust as a basis for dismissal.

conflict and prejudice as they relate to that rule.

There is no evidence in the statute itself or its legislative history to indicate that Congress considered the existence of interjurisdictional plea agreements and their effect on the applicability of Rule 2(d). Likewise the parties cite, and we have found, no reported cases applying and interpreting Rule 2(d) in the context of an interjurisdictional plea agreement. Indeed, there is very little case law of any kind interpreting and applying Rule 2(d). Two courts in the Western District of Missouri recently applied Rule 2(d) and dismissed petitions on the grounds that they challenged judgments of different courts in violation of the rule. *See Mudd v. Armontrout*, 1988 WL 222711, 1988 U.S.Dist. LEXIS 7057, No. 88–0628–CV–W–8–P, slip op. July 11, 1988 (dismissing without prejudice a habeas petition which challenged convictions and sentences of two different counties); *Ferguson–Bey v. Higgins*, 1988 WL 222715, 1988 U.S.Dist. LEXIS 7108, No. 88–0546–CV–W–5–P, slip op. July 8, 1988 (dismissing from a habeas petition a claim which sought to attack the judgment of a different court which had been used in the primary conviction to classify the petitioner as a persistent offender); *see also, United States ex rel Holleman v. Duckworth*, 592 F.Supp. 1423 (N.D.Ill.1984) (noting in a habeas petition challenging a conviction based on violation of the Interstate Agreement on Detainers that petitioner "properly ... made separate collateral attacks on his convictions" and citing Rule 2(d)), rev'd on other grounds, 770 F.2d 690 (7th Cir.1985). What little case law exists applies Rule 2(d) strictly.

▪ In addition to the fact that neither the language of the rule nor the case law recognizes an exception based on inefficiency, the possibility of prejudice, conflict between courts, or inadequacy of relief where separate petitions are brought, petitioner's arguments are simply unpersuasive. Petitioner's efficiency argument is without

merit. If the need for judicial efficiency provided a basis for circumventing habeas corpus procedural requirements such as Rule 2(d), the exception would swallow the rule; it would always be more efficient from the petitioner's standpoint to file a single petition incorporating challenges to the judgments of various jurisdictions. *Cf. Duckworth v. Serrano*, 454 U.S. 1, 102 S.Ct. 18, 70 L.Ed.2d 1 (1981) (per curiam) (rejecting an exception to the exhaustion requirements for "clear violations" based on judicial economy).

▪ Petitioner's arguments regarding the potential for conflict and prejudice if he is required to challenge the Washington and California judgments in two separate petitions are likewise unpersuasive on the facts of this case.[7] To the extent that petitioner seeks to remove the detainer, and avoid any confinement by the State of California following his release by Washington, he need attack only the California judgment. *See* note 4 *supra*. Petitioner does not challenge the particular effect being given the California detainer by the Washington authorities, just Washington's routine enforcement of the detainer. *Cf. Nelson v. George*, 399 U.S. 224, 90 S.Ct. 1963, 26 L.Ed.2d 578 (1970) (holding that petition is properly directed to California authorities where claim is not that North Carolina conviction or detainer were unlawful but that California was giving the detainer an impermissible effect by allowing it to affect adversely the probability of petitioner securing parole). Since petitioner need challenge only the California judgment to obtain the detainer relief, he can do so in a single petition, which would render Rule 2(d) irrelevant.

▪ As set out above, petitioner also claims that his convictions are invalid because both California and Washington breached the joint plea agreement, thus rendering his pleas "involuntary." Even assuming that Bianchi's claims regarding breach of the joint plea agreement are colorable, he would sustain no prejudice by

---

7. We do not here decide that Rule 2(d) is mandatory in every instance and may never be waived, but hold that the facts of this case do not warrant an exception to Rule 2(d). It is conceivable that a petitioner challenging an interjurisdictional plea agreement or proceeding might be able to show such prejudice from strict enforcement of Rule 2(d) that waiver of the rule would be required to comport with due process. This is not such a case.

the requirement that he file two separate habeas petitions in conformity with Rule 2(d). After exhausting his state remedies, and assuming neither state grants relief, Bianchi would be required by Rule 2(d) to file two separate habeas petitions, both of which could be brought in the district of confinement. There are a number of devices which the district court might use to consolidate or relate the two petitions so that they could be heard by a single district judge, thus eliminating any potential conflict, inefficiency or prejudice. Even if the petitions were not so consolidated, the findings of the first court might be binding on the second court as a matter of collateral estoppel or res judicata, or the second court might simply defer to the factual findings of the first. At a minimum, any inconsistencies in the findings and holdings of the two district courts could be resolved by this court on appeal.

Because the language of Rule 2(d) is mandatory in nature and petitioner has neither demonstrated any prejudice he will suffer by complying with the rule, nor offered a compelling argument why it should not be applied in his case, we affirm the district court's application of Rule 2(d) and its dismissal of the petition without prejudice.

AFFIRMED.