Second of two modification orders filed 4/15/14

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D062875 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD240220) |
| MYLES AVIAR MENDOZA, | ORDER MODIFYING OPINION |
| Defendant and Appellant. | [No Change in Judgment] |

THE COURT:

It is ordered that the opinion filed herein on April 15, 2014, be modified as follows:

On page 1, following the word "Affirmed." and before Roman numeral I, the following paragraphs are added:

> Charles R. Khoury, under appointment by the Court of Appeal, for Defendant and Appellant.
>
> Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Senior Assistant Attorney General, Scott C. Taylor and Charles C. Ragland, Deputy Attorneys General, for Plaintiff and Respondent.

At page 23, the signature line for Justice Nares is modified to read,

NARES, Acting P. J.

There is no change in the judgment.

_____
NARES, Acting P. J.

Copies to:  All parties

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　v.<br><br>MYLES AVIAR MENDOZA,<br><br>　　　Defendant and Appellant. | D062875<br><br><br>　(Super. Ct. No. SCD240220)<br><br>ORDER MODIFYING OPINION<br><br>[No Change in Judgment] |

THE COURT:

It is ordered that the opinion filed herein on April 14, 2014, be modified as follows:

On page 1, following the word "Affirmed." and before Roman numeral I, the following is added:

> Charles R. Khoury, under appointment by the Court of Appeal, for Defendant and Appellant.
>
> Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Senior Assistant Attorney General, Scott C. Taylor and Charles C. Ragland, Deputy Attorneys General, for Plaintiff and Respondent.

At page 23, the signature line for Justice Nares is modified to read,

NARES, Acting P. J.

There is no change in the judgment.

_____

NARES, Acting P. J.

Copies to:  All parties

Filed 4/15/14  P. v. Mendoza CA4/1 (unmodified version)
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>　　v.<br><br>MYLES AVIAR MENDOZA,<br><br>　　Defendant and Appellant. | D062875<br><br><br><br>(Super. Ct. No. SCD240220) |

APPEAL from a judgment of the Superior Court of San Diego County, Laura Parsky, Judge.  Affirmed.

I.

INTRODUCTION

A jury found Myles Aviar Mendoza guilty of assault with a semiautomatic firearm (Pen. Code, § 245, subd. (b))[1] (count 1), making a criminal threat (§ 422) (count 2), and possessing an illegal assault weapon (§ 30605, subd. (a)) (count 3).  As to counts 1 and 2, the jury found true the allegation that Mendoza personally used a firearm in committing

_____

1      Unless otherwise specified, all subsequent statutory references are to the Penal Code.

those offenses (§ 12022.5, subd. (a)). The trial court placed Mendoza on formal probation for three years.

On appeal, Mendoza claims that the trial court erred in failing to instruct the jury sua sponte on the offenses of simple assault (§ 240) and brandishing a firearm (§ 417, subd. (a)(2)) as lesser included offenses of the charged offense of assault with a semiautomatic firearm (§ 245, subd. (b)) (count 1). Mendoza also contends that there is insufficient evidence in the record to support the jury's verdicts finding him guilty of making a criminal threat and possessing an illegal assault weapon. We affirm the judgment.

## II.

### FACTUAL AND PROCEDURAL BACKGROUND

A.    *The People's case*

In early 2012, Mendoza and victim Daniel Furtado were friends and coworkers. In January or February of that year, Mendoza and Furtado worked on Mendoza's truck together, and Furtado left some car parts at Mendoza's house.

When Furtado called Mendoza seeking to arrange a time to pick up the car parts, Mendoza told Furtado that Furtado "did something wrong to his carburetor," and that it had "[c]ost [Mendoza] all kinds of money." Mendoza hung up on Furtado. Furtado called Mendoza several more times, but never spoke with him.

On March 31, 2012, Furtado was working on a car with Anthony Davis. Davis was interested in buying the car parts that Furtado had left at Mendoza's house. Furtado and Davis decided to go to Mendoza's house to retrieve the car parts. When they arrived

2

at Mendoza's house, Furtado knocked on Mendoza's front door, while Davis stayed in the car. No one answered the door. Furtado drove to the alley behind Mendoza's house to see whether Mendoza's vehicle was there. A chain link fence with a locked gate separated Mendoza's backyard from the alley.

Furtado saw Mendoza's vehicle, went to the gate, and called out Mendoza's name a couple of times. Just as Furtado was getting ready to leave, Mendoza walked out of the back door of his house. Mendoza was holding a gun in his right hand.

Mendoza walked up to the fence until he was within a couple feet of Furtado, pointed the gun at Furtado's face, and said that he was going to shoot Furtado. Mendoza accused Furtado of breaking his truck. Mendoza continued to threaten Furtado. During the ensuing conversation, Mendoza told Furtado at least three times that he was going to shoot him. Each time that Mendoza threatened to shoot Furtado, Mendoza pointed the gun at him.

Davis got out of the car after Mendoza came to the fence. Davis saw Mendoza point a black object at Furtado and heard Mendoza say that he was going to kill Furtado.

After approximately 20 minutes of arguing, Mendoza turned and walked back into his house. Furtado called 911. Shortly thereafter, police took Mendoza into custody.

In Mendoza's house, police found two handguns, an AK-47 assault rifle, and a large amount of ammunition. The AK-47 did not have a device called a "bullet button" attached to it, thereby rendering the rifle an illegal assault weapon under California law.

3

B.    *The defense*

Mendoza testified that on the day of the confrontation with Furtado, he was awakened by the sound of someone rattling the fence that surrounds his backyard. Mendoza said that he picked up an unloaded gun, put it in his back pocket and went outside.  Upon seeing Furtado, Mendoza began to speak with him about the car parts that Furtado had left at Mendoza's house.  Mendoza asked Furtado for money for the damage that Mendoza claimed Furtado had caused to Mendoza's car.  Furtado refused to give Mendoza any money.

Davis then appeared and said, "[W]e're here for these car parts, we're going to get these car parts one way or another.  [Furtado] is not going to giv[e] you no money.  I don't care and I'm coming over your fence."  Davis had a hand on the fence and was trying to pull it down.  Mendoza pulled the gun out from his pocket and told Furtado and Davis not to come over the fence.  Mendoza testified that he feared that Furtado and Davis were going to come over the fence and attack him.  Mendoza ran into his house. He estimated that the encounter lasted five minutes.

Mendoza said that at the time he bought the AK-47 that police found in his home, no one advised him that he could not legally remove the bullet button.

C.    *Rebuttal*

A police officer who responded to Furtado's call to 911 testified that she did not observe any unusual damage to Mendoza's backyard fence.

4

The owner of the store at which Mendoza purchased the AK-47 testified that it was the store's policy for employees to explain to customers that it is illegal in California to possess an AK-47 that does not have a bullet button.

III.

DISCUSSION

A.  *The trial court did not err in failing to instruct the jury sua sponte on simple assault or brandishing a firearm with respect to the charged offense of assault with a semiautomatic firearm*

Mendoza claims that the trial court erred by failing to instruct the jury sua sponte on the offenses of simple assault (§ 240) and brandishing a firearm (§ 417, subd. (a)(2)) with respect to count 1 (assault with a semiautomatic firearm) (§ 245, subd. (b)). Mendoza claims that simple assault and brandishing a firearm are lesser included offenses of assault with a semiautomatic firearm, and that there is substantial evidence in the record that required the trial court to instruct on both uncharged offenses.

We reject Mendoza's claims. We conclude that the record does not contain evidence warranting an instruction on simple assault. We further conclude that brandishing a firearm is not a lesser included offense of assault with a semiautomatic firearm.

1.  *Standard of review*

"We apply the independent or de novo standard of review to the failure by the trial court to instruct on an assertedly lesser included offense." (*People v. Cole* (2004) 33 Cal.4th 1158, 1218 (*Cole*).) In considering whether the trial court had a sua sponte duty

5

to instruct the jury on lesser included offenses, we construe the evidence in the light most favorable to the appellant. (*People v. Turk* (2008) 164 Cal.App.4th 1361, 1368.)

2. *General principles of law governing a trial court's sua sponte duty to instruct on lesser included offenses*

"A trial court must instruct the jury sua sponte on a lesser included offense only if there is substantial evidence, ' "that is, evidence that a reasonable jury could find persuasive" ' [citation], which, if accepted, ' "would absolve [the] defendant from guilt of the greater offense" [citation] *but not the lesser*' [citation]." (*Cole, supra,* 33 Cal.4th at p. 1218.) In other words, "[s]uch instructions are required only where there is 'substantial evidence' from which a rational jury could conclude that the defendant committed the lesser offense, and that he is not guilty of the greater offense." (*People v. DePriest* (2007) 42 Cal.4th 1, 50.)

"An offense is necessarily included in a greater offense when, for present purposes,[2] under the statutory definition of the offenses the greater offense cannot be committed without necessarily committing the lesser." (*People v. Basuta* (2001) 94 Cal.App.4th 370, 392.)

---

2    "Under the accusatory pleading test, a court reviews the accusatory pleading to determine whether the facts actually alleged include all of the elements of the uncharged lesser offense; if it does, then the latter is necessarily included in the former." (*People v. Parson* (2008) 44 Cal.4th 332, 349.) Mendoza makes no argument that the accusatory pleading test for determining whether an offense is a lesser included offense has any relevance to this case.

6

3. *The trial court did not err in failing to instruct the jury on simple assault as a lesser included offense of the charged offense of assault with a semiautomatic firearm*

a. *Relevant law*

"An assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." (§ 240.)

"Any person who commits an assault upon the person of another with a semiautomatic firearm shall be punished by imprisonment in the state prison for three, six, or nine years." (§ 245, subd. (b).)

We assume for purposes of this decision that simple assault is a lesser included offense of assault with a semiautomatic firearm.[3] (Cf. *People v. Miceli* (2002) 104 Cal.App.4th 256, 272 ["The trial court instructed on assault (§ 240) as a lesser included offense of assault with a semiautomatic firearm"].)

"A long line of California decisions holds that an assault is not committed by a person's merely pointing an (unloaded) gun in a threatening manner at another person. [Citations.]" (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11, fn. 3 (*Rodriguez*).)[4] A "threat to shoot with an unloaded gun is not an assault, since the defendant lacks the present ability to commit violent injury." (*People v. Fain* (1983) 34 Cal.3d 350, 357, fn. 6.) Nevertheless, a defendant who uses, or has the present ability to use, an unloaded gun

___

3     The People do not contend otherwise.

4     Immediately following this quotation, the *Rodriguez* court stated, "The continuing viability of this rule is not questioned in this case, and the parties' briefs do not address it." (*Rodriguez*, *supra*, 20 Cal.4th at p. 11, fn. 3.) The Supreme Court has not abrogated this line of authority in the wake of *Rodriguez*.

as a club or bludgeon may be convicted of assault with a firearm. (*Ibid.,* see also *People v. Miceli, supra,* 104 Cal.App.4th at p. 270 ["A person may commit an assault [with a semiautomatic firearm] under [§ 245, subd. (b)] by using the gun as a club or bludgeon, regardless of whether he could also have fired it in a semiautomatic manner at that moment"]; *People v. Chance* (2008) 44 Cal.4th 1164, 1172, fn. 7 ["On the rule that assault cannot be committed with unloaded gun, unless the weapon is used as a bludgeon, see, e.g., [*Rodriguez, supra*, 20 Cal.4th at p.] 11 and footnote 3; [*People v. Valdez* (1985) 175 Cal.App.3d 103,] 111; 1 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Crimes Against the Person, section 9, page 644"].)

> b. *The record does not contain substantial evidence from which a reasonable jury could find that Mendoza was not guilty of assault with a semiautomatic firearm but guilty of simple assault*

> i. *Relevant facts*

Furtado testified that during the incident in question, Mendoza pointed a gun at him "no less than three times," while threatening to shoot him.

With respect to his use of a gun during the encounter with Furtado, Mendoza testified as follows[5]:

> "I took my gun from my back pocket and I pulled it out and I told them, I said, if you guys hop this fence, this is going to be the last fence that you guys hop."

---

[5]     Mendoza does not contend on appeal that the jury could have reasonably found that the gun was not a semiautomatic firearm.

Mendoza also testified that the gun was unloaded and that he was standing approximately five feet behind a chain link fence that separated him from Furtado, throughout the entire encounter.

### ii.     *Application*

Mendoza suggests that a lesser included offense instruction as to simple assault was required in light of his testimony that the gun that he used during the incident was unloaded. We disagree.

As discussed above, an assault cannot be committed with an unloaded gun unless the defendant has the present ability to use the gun as a bludgeon. (*People v. Fain*, *supra*, 34 Cal.3d at p. 357, fn. 6.) We assume for purposes of this decision that Mendoza's testimony that he "pulled . . . out" an "unloaded" gun while standing five feet behind a fence constituted substantial evidence from which the jury could have found that Mendoza had the present ability to use the unloaded gun as a bludgeon.[6] However, even assuming that Mendoza had the present ability to use his unloaded gun as a bludgeon, he still would have committed the *greater* offense of assault with a semiautomatic firearm, *not* simple assault. (See *People v. Miceli, supra,* 104 Cal.App.4th at p. 270 ["when defendant used his unloaded automatic firearm as a bludgeon, he committed the offense of assault with a semiautomatic firearm"].) Thus, Mendoza has not identified any

---

[6]     We emphasize that we make this assumption strictly for purposes of this opinion. In fact, we question whether there is substantial evidence in the record that Mendoza had the present ability to use the gun as a bludgeon in light of his testimony that he was five feet behind a chain link fence that separated him from Furtado during the encounter.

9

evidence in the record that would " ' "absolve [him] from guilt of the greater offense" [citation] *but not the lesser.*' [Citation.]" (*Cole, supra,* 33 Cal.4th at p. 1218.)[7]

4. *Brandishing a firearm is not a lesser included offense of assault with a semiautomatic firearm*

The offense of brandishing a deadly weapon or firearm is defined in section 417. Section 417, subdivision (a)(2) provides in relevant part:

> "Every person who, except in self-defense, in the presence of any other person, draws or exhibits any firearm, whether loaded or unloaded, in a rude, angry, or threatening manner, or who in any manner, unlawfully uses a firearm in any fight or quarrel is punishable . . . ."

In *People v. Steele* (2000) 83 Cal.App.4th 212, 218 (*Steele*), the Court of Appeal rejected a defendant's contention that brandishing is a lesser included offense of assault with a firearm. The *Steele* court reasoned:

---

[7]     Contrary to the argument that Mendoza presented in his opening brief, in his reply brief and at oral argument, Mendoza maintained that the jury found that the gun was *loaded*. In fact, the jury did not expressly find that the gun was loaded. However, Mendoza argues "had [the jury] believed that the gun was unloaded, [the jury] would have had to conclude that appellant did not have the present ability to commit a violent injury on Furtado." Even assuming that Mendoza were correct that a jury could not find that he committed an assault unless it found that the gun was loaded, this assumption does not strengthen his argument that an instruction on simple assault was required. Under this assumption, if the jury found that the gun was unloaded, Mendoza would be guilty of *no* offense. Simple assault requires proof of present ability to commit a violent injury upon another person (§ 240). If the jury found that the gun was loaded, then Mendoza would be guilty of the felony offense of assault with a semiautomatic firearm. (See *People v. Miceli, supra,* 104 Cal.App.4th at p. 270.) In either case, there is no evidence from which a reasonable juror could have concluded that Mendoza committed the lesser offense of simple assault, but not the greater offense of assault with a semiautomatic firearm. (See *Cole, supra,* 33 Cal.4th at p. 1218.)

"Even though most assaults with a firearm undoubtedly include conduct fitting into the definition of brandishing, it has long been held that brandishing is a lesser related offense,[8] rather than lesser included. (*People v. Piercy* (1911) 16 Cal.App. 13, 16; *People v. Diamond* (1939) 33 Cal.App.2d 518, 522-523; *People v. Torres* (1957) 151 Cal.App.2d 542, 544-545; *People v. Leech* (1965) 232 Cal.App.2d 397, 399; *People v. Birch* (1969) 3 Cal.App.3d 167, 176; *People v. Orr* (1974) 43 Cal.App.3d 666, 673; *People v. Beach* (1983) 147 Cal.App.3d 612, 626; *People v. Lipscomb* (1993) 17 Cal.App.4th 564, 569 [treating brandishing as a lesser *related* offense to assault with a firearm].) The reason of course, is that it is theoretically possible to assault someone with a firearm without exhibiting the firearm in a rude, angry or threatening manner, e.g., firing or pointing it from concealment, or behind the victim's back. (*People v. Escarcega* [(1975)] 43 Cal.App.3d 391, 398 (*Escarcega*).)"  (Fn. omitted.)

Notwithstanding the strong logical and legal support for the proposition that brandishing is *not* a lesser included offense of assault with a firearm as outlined in *Steele*, Mendoza argues that the Supreme Court held in *People v. Wilson* (1967) 66 Cal.2d 749, 764 (*Wilson*) that brandishing *is* a lesser included offense of assault with a deadly weapon.[9] We disagree with Mendoza's assertion that the *Wilson* court so held. (See *Escarcega, supra*, 43 Cal.App.4th at p. 399 [rejecting argument that *Wilson* court held

---

8       "[I]f a crime does not qualify as a lesser *included* offense because all of its elements are not subsumed within the elements of the charged crime or within the charging allegations, it may nonetheless be a lesser *related* offense of the charged crime. When an offense 'is closely related to that charged and the evidence provides a basis for finding the defendant guilty of the lesser but innocent of the charged offense,' the offense is deemed to be 'lesser related' and, upon a defendant's request, a trial court must instruct the jury on the lesser related offense." (*People v. Lagunas* (1994) 8 Cal.4th 1030, 1034-1035.)

9       Although *Wilson* involved the charged offense of assault with a *deadly weapon with intent to commit murder* (*Wilson, supra,* 66 Cal.2d at p. 752), and the charged offense in this case is assault with a *semiautomatic firearm*, we assume for purposes of this discussion that this distinction is immaterial.

11

"that the conduct proscribed by section 417 is necessarily committed in every Penal Code section 245 assault with a deadly weapon violation"]; cf. *Steele*, *supra*, 83 Cal.App.4th at p. 219 [stating that the *Wilson* court did "not direct hold [] that brandishing [is] a lesser included offense to assault with a firearm"].)

In *Wilson*, a jury found the defendant guilty of two counts of murder, one count of assault with a deadly weapon with intent to commit murder (§ 217), and one count of assault with a deadly weapon as a lesser included offense of assault with a deadly weapon with intent to commit murder (§ 217), and fixed the penalty for the commission of the murders as death. (*Wilson, supra*, 66 Cal.2d at p. 752.) With respect to the murder counts, the *Wilson* court concluded that the trial court had erred in failing to instruct the jury on the offense of brandishing a weapon. (*Id*. at pp. 759-760.) The *Wilson* court reasoned that an instruction on brandishing was necessary in order to enable the defendant to fully present his "defense" (*id*. at p. 757) to the prosecution's felony-murder theory of the case. The *Wilson* court explained that "the defendant, particularly in a capital case, is entitled to have the jury instructed on the law applicable to the evidence he presents." (*Id*. at pp. 762-763.) The *Wilson* court applied this law in concluding that an instruction on brandishing was required in that case:

> "Proper instructions on section 417 would have told the jury that violation of the section was merely a misdemeanor and that, if defendant entered the apartment with an intent to violate that section and not to commit an assault with a deadly weapon, his entry would not constitute a burglary, and that the felony-murder rule was inapplicable. Proper instructions also would have permitted the jury to find that the killing occurred without malice in the commission of an unlawful act not amounting to a felony, a violation of section 417, which is involuntary manslaughter." (*Wilson, supra,* at p. 758.)

12

According to the *Wilson* court, the failure to provide an instruction on brandishing "effectively removed from the jury one of the principal defenses presented, [and] constituted error in the circumstances of this case." (*Wilson, supra*, 66 Cal.2d at p. 757.)

After explaining its rationale for reversing the murder convictions, the *Wilson* court also reversed the conviction for assault with a deadly weapon. The *Wilson* court reasoned:

> "[T]he judgment of conviction for assault with a deadly weapon upon [the victim] . . . must be reversed for failure to instruct on section 417 [brandishing]. 'An assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another.' ([§] 240.) Defendant did not shoot or strike [the victim]; had the jury been instructed on section 417 the evidence would have justified the conclusion that defendant committed a violation of that section rather than the assault found. (*People v. Carmen* [1951] 36 Cal.2d 768, 774-775 [(*Carmen*)].)[10] Under the rules set forth above, the error must be deemed prejudicial." (*Wilson, supra*, 66 Cal.2d at p. 764.)

The ratio decidendi[11] of *Wilson* with respect to the court's reversal of the conviction for the assault offense is unclear. The only case that the *Wilson* court cited, *Carmen*, *supra*, 36 Cal.2d 768, merely supports the proposition that there was evidence in

10    The *Wilson* court noted earlier in its opinion that in *Carmen*, the court had held that since the defendant in that case had been prosecuted under a felony-murder theory and there was evidence that the defendant committed only the misdemeanor offense of brandishing, the defendant was entitled to an instruction based on misdemeanor manslaughter "on the ground that if his testimony was correct the killing occurred during the commission of a misdemeanor and not a felony." (*People v. Wilson, supra*, 66 Cal.2d at p. 759, citing *Carmen, supra*, 36 Cal.2d at pp. 774-775.)

11    "[The] ratio decidendi is the principle or rule which constitutes the basis of the decision and creates binding precedent." (*United Steelworkers of America v. Board of Education* (1984) 162 Cal.App.3d 823, 834.)

13

the record that the defendants in both *Wilson* and *Carmen* committed the offense of brandishing.  (*Carmen, supra*, at p. 775.)  As the *Escarcega* court observed, "Nothing is seen in . . . *Carmen*[, *supra*, at pages] 774-775 which lends any support to the theory that commission of a Penal Code section 417 offense *necessarily* results from a section 245 assault with a deadly weapon."  (*Escarcega, supra*, 43 Cal.App.3d at p. 400.)

In the final sentence of the passage from *Wilson* quoted above, the *Wilson* court referred to the "rules set forth above."  (*Wilson, supra*, 66 Cal.2d at p. 764.)  The *Wilson* court appears to have been referring to its analysis supporting its conclusion that the defendant was entitled to an instruction on brandishing with respect to the murder counts in order to explain his "defense" (*id.* at p. 757) that he had committed two misdemeanor manslaughters, rather than two felony murders.[12]  Thus, it is possible to interpret *Wilson* as holding that, under the particular circumstances of that capital case, an instruction on brandishing was required with respect to the assault charge *not because brandishing is a lesser included offense of assault with a deadly weapon with intent to commit murder*, but instead, to explain the defendant's theory of the case.[13]  (Cf. *People v. Geiger* (1984) 35 Cal.3d 510, 524 [citing the murder instruction portion of *Wilson* and stating, "In other

---

12    Alternatively, the *Wilson* court may have intended its reference to "the rules set forth above," to refer to its prejudice analysis.  (*Wilson, supra*, 66 Cal.2d at p. 764.)  If that is the case, the basis of the *Wilson* court's reasoning with respect to the assault with a deadly weapon conviction is all the more cryptic.

13    As noted above, the *Wilson* court did *not* hold that brandishing is a lesser included offense to murder, but rather, only that an instruction on brandishing was required in that case in order to explain the defendant's "defense" (*Wilson, supra*, 66 Cal.2d at p. 757) that he had committed two misdemeanor manslaughters, rather than two felony murders.

14

contexts this court has both approved and required instructions on related offenses that are *not* 'necessarily included' in the offense charged when the denial of the right to have the jury consider them would be fundamentally unfair, or when conviction of the related offense would be appropriate and would not undermine the defendant's right to notice" (italics added)].)[14]

In *Escarcega, supra*, 43 Cal.App.3d at page 399, in rejecting a defendant's argument that the Supreme Court had held in the preceding passage from *Wilson* that brandishing (§ 417) is a lesser included offense of assault with a deadly weapon, the court stated:

> "The language of *People v. Wilson* must be given a reasonable interpretation. Nowhere did the court discuss or consider the rationale of the 'lesser and necessarily included offense.' Nor did the court hold that the elements of section 417 were necessarily included in a charge of assault with a deadly weapon. Demonstrably, according to long-established principles, section 417 is not such a necessarily included offense. And it is significant that the court showed no purpose to overrule or modify those principles. Further, if the purpose was to hold the forbidden conduct of section 417 to be necessarily included in an assault with a deadly weapon charge, we may reasonably conclude that the court would have contemporaneously disapproved the many contrary Court of Appeal decisions which were then extant."

For the reasons stated above, we agree with the *Escarcega* court that the Supreme Court in *Wilson* did *not* hold that section 417 is a lesser included offense of assault with a

---

14    In *Geiger,* the Supreme Court concluded that a defendant has a state constitutional right to a lesser *related* offense instruction under certain circumstances. (*Geiger, supra,* 35 Cal.4th at p. 514.) However, in *People v. Birks* (1998) 19 Cal.4th 108, 119, the Supreme Court overruled *Geiger*. Thus, to the extent this portion of *Wilson* is premised on reasoning adopted in *Geiger*, such reasoning no longer remains good law in the wake of *Birks*.

15

deadly weapon.[15]  We decline to conclude that the *Wilson* court sub silentio abrogated the "at least four published appellate court decisions decided [before *Wilson*] that [concluded] brandishing a firearm was not a lesser included offense to assault with a deadly weapon (firearm)." (*Steele, supra*, 83 Cal.App.4th at pp. 214-215.)[16]  Further, we conclude that because "an assault with a firearm may be committed without the defendant brandishing such weapon" (*id*. at p. 221), under the well-known statutory elements test for determining the existence of lesser included offenses, "brandishing cannot be a lesser included offense to assault with a [semiautomatic] firearm." (*Ibid*.)

Accordingly, we conclude that the trial court did not err in failing to instruct the jury sua sponte on the offense of brandishing a firearm with respect to the charged offense of assault with a semiautomatic firearm.

---

[15]    Technically, the *Wilson* court was considering whether a brandishing offense was required with respect to the charged offense of assault with a deadly weapon *with the intent to commit murder*.

[16]    We acknowledge that in *People v. Coffey* (1967) 67 Cal.2d 204 (*Coffey*), the Supreme Court stated the following in a footnote:  "The jury herein was properly instructed that section 417 sets forth a lesser offense necessarily included in those charged [including assault with a deadly weapon upon the person of a police officer]. (Cf. *People v. Wilson* (1967) 66 Cal.2d 749, 757-761.)" (*Coffey, supra*, at p. 222, fn. 21.)  As Mendoza acknowledges, the *Coffey* court's statement in this regard is dictum. (*Escarcega, supra*, 43 Cal.App.3d at p. 400.)  Thus, "under well-known rules [this statement from *Coffey*] may be considered as without precedential value." (*Ibid*.)

16

B.    *There is sufficient evidence in the record to support the jury's verdicts finding Mendoza guilty of making a criminal threat and possessing an illegal assault weapon*

Mendoza claims that there is insufficient evidence in the record to support the jury's verdicts finding him guilty of making a criminal threat and possessing an illegal assault weapon.

1.    *Standard of review*

In determining the sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (*Jackson v. Virginia* (1979) 443 U.S. 307, 319.)  "[T]he court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt."  (*People v. Johnson* (1980) 26 Cal.3d 557, 578.)

2.    *There is sufficient evidence in the record to support the jury's verdict finding Mendoza guilty of making a criminal threat*

Mendoza claims that there is insufficient evidence in the record of two elements that are necessary to support the jury's verdict finding him guilty of making a criminal threat.  Specifically, he contends that the record lacks substantial evidence that the threat that he is alleged to have made conveyed an immediate prospect of execution or caused the victim to be in sustained fear.

17

a.      *Governing law*

In *People v. Toledo* (2001) 26 Cal.4th 221, 227–228, the Supreme Court

summarized the elements of making a criminal threat (§ 422) as follows:

> "In order to prove a violation of section 422, the prosecution must establish all of the following: (1) that the defendant 'willfully threaten[ed] to commit a crime which will result in death or great bodily injury to another person,' (2) that the defendant made the threat 'with the specific intent that the statement . . . is to be taken as a threat, even if there is no intent of actually carrying it out,' (3) that *the threat—which may be 'made verbally, in writing, or by means of an electronic communication device'—was 'on its face and under the circumstances in which it [was] made, . . . so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat*, (4) *that the threat actually caused the person threatened 'to be in sustained fear for his or her own safety or for his or her immediate family's safety*,' and (5) that the threatened person's fear was 'reasonabl[e]' under the circumstances.  [Citation.]"
>
> (Quoting § 422; italics added, fn. omitted.)[17]

"[A]ll of the circumstances can and should be considered in determining whether a

terrorist threat [pursuant to section 422] has been made."  (*People v. Solis* (2001) 90

Cal.App.4th 1002, 1014 [stating that "it is clear a jury can properly consider a later action

---

[17]     Section 422 provides in relevant part: "Any person who willfully threatens to commit a crime which will result in death or great bodily injury to another person, with the specific intent that the statement, made verbally, in writing, or by means of an electronic communication device, is to be taken as a threat, even if there is no intent of actually carrying it out, which, on its face and under the circumstances in which it is made, is so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat, and thereby causes that person reasonably to be in sustained fear for his or her own safety or for his or her immediate family's safety, shall be punished by imprisonment in the county jail not to exceed one year, or by imprisonment in the state prison."

18

taken by a defendant in evaluating whether the crime of making a terrorist threat has been committed"].)

In *In re George T.* (2004) 33 Cal.4th 620, 635, the Supreme Court summarized the meaning of the immediate prospect of execution element as follows:

> "With respect to the requirement that a threat be 'so unequivocal, unconditional, immediate, and specific as to convey to the person threatened a gravity of purpose and an immediate prospect of execution of the threat,' we explained in *People v. Bolin* [(1998)] 18 Cal.4th 297, that the word 'so' in section 422 meant that ' "unequivocality, unconditionality, immediacy and specificity are not absolutely mandated, but must be sufficiently present in the threat and surrounding circumstances. . . ." ' (*Bolin, supra,* 18 Cal.4th at p. 340, quoting *People v. Stanfield* (1995) 32 Cal.App.4th 1152, 1157.) 'The four qualities are simply the factors to be considered in determining whether a threat, considered together with its surrounding circumstances, conveys those impressions to the victim.' [Citation]."

With respect to the sustained fear element, the word "sustained" "means a period of time that extends beyond what is momentary, fleeting, or transitory." (*People v. Allen* (1995) 33 Cal.App.4th 1149, 1156 (*Allen*).) A "victim's knowledge of defendant's prior conduct is relevant in establishing that the victim was in a state of sustained fear." (*Ibid*.) In addition, evidence of a defendant's emotional state is relevant to the determination of whether the victim suffered sustained fear. (See *People v. Culbert* (2013) 218 Cal.App.4th 184, 191, fn. 3 (*Culbert*) [concluding that there was substantial evidence that victim suffered sustained fear from incident in which "angry stepparent" put firearm to victim's head]; cf. *People v. Martinez* (1997) 53 Cal.App.4th 1212, 1221 ["Defendant was extremely angry, was cursing at Iorio and was in very close proximity to Iorio when he made the threats. This type of situation can be very intimidating and can carry an aura of

19

serious danger"].)  The seriousness of the threat is also relevant in determining whether there is substantial evidence that the victim suffered sustained fear.  (See *People v. Fierro* (2010) 180 Cal.App.4th 1342, 1348 ["Facing what he thought was a gun and hearing words to the effect that he and his son were about to be killed, [the victim] was in sustained fear for his and his son's life"].)

   b. *Application*

  With respect to the immediate prospect of execution element, Furtado testified that Mendoza repeatedly stated that he was going to shoot Furtado while pointing a gun at Furtado during an argument between the two.  Furtado explained that Mendoza appeared "serious, mad, [and] agitated."  Davis testified that Mendoza pointed what appeared to be a small black object at Furtado and threatened to kill him.  Davis further stated that Mendoza appeared to be "really upset with [Furtado]."  Mendoza acknowledged that he showed Furtado and Davis a gun during the incident.  This testimony plainly constitutes substantial evidence from which a jury could find that Mendoza made a threat " 'so unequivocal, unconditional, immediate, and specific as to convey to the person threatened a gravity of purpose and an immediate prospect of execution of the threat' [citation]."  (*In re George T.*, *supra*, 33 Cal.4th at p. 635.)

  As to the sustained fear element, Furtado testified that he was scared at the beginning of the encounter when he saw Mendoza walk out of his house with a gun.  Furtado also testified that later, when Mendoza pointed the gun at him during the argument and threatened to shoot him, he was scared of "getting shot."  Furtado explained that he had "never known [Mendoza] to . . . joke and kid around," and that he

20

believed that the gun was loaded because it had a "clip . . . in it." Davis testified that Furtado appeared "a little scared," during the incident. After the incident, which Furtado estimated lasted approximately 20 minutes, he immediately called 911. The responding police officer testified that Furtado came "running towards [her]," as she arrived on the scene.

In light of Furtado's testimony that he was scared at different times during the encounter (see *Allen, supra,* 33 Cal.App.4th at p. 1156), Furtado's testimony that he had never known Mendoza to "joke around" (see *ibid*.), Furtado and Davis's testimony that Mendoza appeared to be angry (see *Culbert*, *supra*, 218 Cal.App.4th at p. 191, fn. 3), and Furtado's testimony that Mendoza repeatedly pointed a gun at him and threatened to shoot him during a 20-minute encounter, we conclude that there is substantial evidence from which the jury could reasonably find that Mendoza's threats caused Furtado to suffer sustained fear.

We reject Mendoza's argument that the record lacks substantial evidence that Furtado suffered sustained fear because "[Furtado's] actions of standing there arguing with appellant about the car parts belie [his] statement [that he was afraid]." While Mendoza is correct that it is undisputed that Furtado did not flee the scene upon seeing the gun and Furtado testified that during portions of the incident he was "aggravated,"[18] a reasonable jury could have nonetheless found that Furtado suffered sustained fear, even if the evidence showed that he experienced other emotions, as well, during the incident.

_____

[18]    Furtado testified that he "was a little, like, aggravated that this was even happening."

21

3.      *There is sufficient evidence in the record to support the jury's verdict finding Mendoza guilty of possessing an illegal assault weapon*

Mendoza claims that there is insufficient evidence in the record to support the jury's verdict finding him guilty of possessing an illegal assault weapon. Specifically, Mendoza claims that there is insufficient evidence that he knew that a modification that he performed on the weapon made it an illegal assault weapon. We disagree. The requisite knowledge element requires only that a defendant *reasonably should have known* that the firearm in question had the characteristics of an illegal assault weapon. We conclude that there is sufficient evidence that Mendoza knew or *should have known* that his weapon, as modified, had the characteristics of an illegal assault weapon.

a.      *Governing law*

Section 30605, a provision of the Assault Weapons Control Act (ACWA), provides:

> "(a) Any person who, within this state, possesses any assault weapon, except as provided in this chapter, shall be punished by imprisonment in a county jail for a period not exceeding one year, or by imprisonment pursuant to subdivision (h) of Section 1170."

Section 30515 provides in relevant part:

> "(a) . . . '[A]ssault weapon' also means any of the following:
>
> (1) A semiautomatic, centerfire rifle that has the capacity to accept a detachable magazine and any one of the following:
>
> (A) A pistol grip that protrudes conspicuously beneath the action of the weapon."

22

In *In re Jorge M.* (2000) 23 Cal.4th 866, 869 (*Jorge M*.), the Supreme Court concluded that "actual knowledge regarding the firearm's prohibited characteristics is [not] required."  In reaching this conclusion, the court reasoned in part:

> "The gravity of the public safety threat addressed in the AWCA, however, together with the substantial number of prosecutions to be expected under it and the potential difficulty of routinely proving actual knowledge on the part of defendants, convince us [former] section 12280(b) [current section 30605] was not intended to contain such an actual knowledge element."  (*Jorge M., supra,* at p. 887.)

Rather than *actual* knowledge, the *Jorge M*. court held that "the People bear the burden of proving the defendant *knew or reasonably should have known* the firearm possessed the characteristics bringing it within the AWCA."  (*In re Jorge M.*, *supra*, 23 Cal.4th at p. 887.)  In discussing the type of evidence that would demonstrate the knowledge element, the court in *Jorge M., supra,* at pages 887-888 stated:

> "The question of the defendant's knowledge or negligence is, of course, for the trier of fact to determine, and depends heavily on the individual facts establishing possession in each case.  Nevertheless, we may say that in this context the Legislature presumably did not intend the possessor of an assault weapon to be exempt from the AWCA's strictures merely because the possessor did not trouble to acquaint himself or herself with the gun's salient characteristics.  Generally speaking, a person who has had substantial and unhindered possession of a semiautomatic firearm reasonably would be expected to know whether or not it is [an illegal assault weapon]."

b.      *Factual background*

Mendoza purchased an AK-47 rifle from a gun store in October 2011.  It is undisputed that at the time Mendoza purchased the AK-47, it had a "bullet button" on it, which a police department employee testified made the gun legal to possess in California.

23

The bullet button prevented the magazine from being removed without a tool.[19]  An

employee of the store from which Mendoza purchased the item explained the reason for

the bullet button as follows:

> "The idea behind it is that it will take you longer to reload a
> magazine.  Therefore, if you had ill-intent with it, it would take you
> longer to reload and you would not be as effective with the firearm."

It was the custom and practice of the store from which Mendoza purchased the

AK-47 to inform customers that removing the bullet button would make the gun an

illegal assault weapon.  After purchasing the AK-47, Mendoza removed the bullet

button,[20] thereby making the gun an illegal assault weapon.  Mendoza owned two other

firearms in addition to the AK-47.

     c.    *Application*

The People presented evidence that Mendoza owned the AK-47 for approximately

five months before the incident in question.  Thus, there was evidence from which the

jury could reasonably have found that he "had substantial and unhindered possession" of

the firearm.  (*Jorge M.*, *supra*, 23 Cal.4th at p. 887.)  In addition, Mendoza bought the

AK-47 from a gun store whose custom and practice was to inform customers of the

relevant assault weapon law.  Moreover, Mendoza owned two other firearms, making it

all the more reasonable for him to "acquaint himself" with applicable gun regulations.

---

[19]    Thus, with a bullet button, the firearm does not have the "capacity to accept a detachable magazine."  (§ 30515.)

[20]    Mendoza testified that he removed the bullet button in order to stain a part of the firearm.

(*Ibid.*)  Further, Mendoza performed a significant modification of the AK-47, which had the effect of making it easier to rapidly reload the gun and that made the firearm illegal for him to possess.  Under these circumstances, there is substantial evidence from which a jury could have found that Mendoza knew *or should have known* that he possessed an illegal assault weapon.

IV.

DISPOSITION

The judgment is affirmed.

_____
AARON, J.

WE CONCUR:


_____
NARES, Acting P. J.


_____
IRION, J.