[Civ. No. 44729. First Dist., Div. Four. May 23, 1979.]

In re JIMMY M., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
JIMMY M., Defendant and Appellant.

**COUNSEL**

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, Clifton R. Jeffers, Chief Assistant State Public Defender, Harriet Wiss Hirsch and David R. Lipson, Deputy State Public Defenders, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Ann K. Jensen and R. Gordon Baker, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**THE COURT.**\*—Jimmy M., a minor, appeals from an order of the juvenile court finding him to be a person described in Welfare and Institutions Code section 602[1] and committing him to the California Youth Authority (hereinafter CYA).

---

\*The intended decision was stated in open court by Rattigan, J., Caldecott, P. J., and Christian, J., concurred.

[1]This statute (hereinafter section 602) provides in pertinent part: "Any person who is under the age of 18 years when he violates any law of this state . . . is within the jurisdiction of the juvenile court, which may adjudge such person to be a ward of the court."

In 1978, when appellant was 17 years old, the Santa Clara County District Attorney filed in the juvenile court a series of petitions in which he alleged that appellant came within the provisions of section 602 because he had committed violations of Penal Code section 245 (assault with a deadly weapon, a felony), Penal Code section 484 (petty theft, a misdemeanor), and Business and Professions Code section 25662 (possession of an alcoholic beverage by a minor, a misdemeanor). In a supplemental petition filed at the same time, but in an earlier proceeding, the district attorney alleged that appellant came within the provisions of section 602 because "the previous disposition in the matter has not been effective in the rehabilitation of the minor [appellant] in that said minor has failed to complete public service work" as theretofore ordered.

The several proceedings were consolidated. For reasons not shown in the record, the jurisdictional and dispositional hearings in the consolidated matter were conducted together on July 6, 1978. The probation officer had by then filed a "social studies" report on appellant. The report is not in the record, but it apparently included a "ranch recommendation": i.e., a recommendation by the probation officer that appellant be committed to a Santa Clara County juvenile facility if the allegations made in the petitions were sustained.

Appellant was present at the hearing with his mother and his attorney. The latter informed the court that the petitions would not be contested. The court thereupon read the charges and informed appellant of his rights. Appellant expressed his understanding of his rights, waived them with the expressed concurrence of his mother and his attorney, and admitted the allegations made in the petition. The court pronounced its finding that he came within the provisions of section 602, and requested comments from the attorney. After the attorney had spoken briefly, the court ordered appellant committed to the CYA for a maximum term of confinement set at four years.

■ It is undisputed that the juvenile court did not include in its recital of appellant's rights any reference to the fact that his admission of the allegations made in the petitions could produce the consequence of his commitment to the CYA, for four years or at all. It is also undisputed that the court made no such reference at any time before it actually ordered the commitment. Appellant consequently claims reversible *Boykin-Tahl* error. (*Boykin* v. *Alabama* (1969) 395 U.S. 238 [23 L.Ed.2d 274, 89 S.Ct. 1709]; *In re Tahl* (1969) 1 Cal.3d 122 [81 Cal.Rptr. 577, 460 P.2d 449]. See *In re Yurko* (1974) 10 Cal.3d 857, 864 [112 Cal.Rptr. 513, 519 P.2d 516];

*In re Ronald E.* (1977) 19 Cal.3d 315, 320-321 [137 Cal.Rptr. 781, 562 P.2d 684].)

The Attorney General contends that appellant's knowledge of the possibility of a CYA commitment is shown in his attorney's statement to the court. The attorney referred to the probation officer's "ranch recommendation," to a CYA commitment as an "option that is available to the court," and to having discussed the matter with appellant generally. The attorney's remarks were ambiguous, but it is not at all clear that he told appellant that a CYA commitment was a possible consequence of his admission of the allegations.[2] In sum, the record does not show that appellant knew this. The court not having informed him of it, we find *Boykin-Tahl* error as claimed. (*In re Ronald E., supra,* 19 Cal.3d 315 at pp. 320-325.)

■ As is made clear in the decision just cited, however, the error does not command reversal unless appellant shows that he was prejudiced by it. (*In re Ronald E., supra,* 19 Cal.3d 315 at p. 325.) The record *on appeal* shows nothing in this regard. The *Ronald E.* court denied a petition for habeas corpus which was similarly silent as to any element of prejudice resulting from an identical error committed by a juvenile court. (19 Cal.3d at pp. 319, 322-328.) This language from its decision therefore applies here, with the appropriate paraphrasing indicated:

"The determinative question on the issue of prejudice is as follows: Is it reasonably probable that . . . [appellant] . . . might not have been committed to the Youth Authority had the court advised him, prior to his admission of the truth of the allegations, that he might be so committed? (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].) We do not know . . . whether [appellant] would or would not have admitted the truth of the allegations if he had been advised of the consequences of his admission. We deem it significant, however, that [he] provides us with no basis for a belief that had he been properly admonished he would have entered a different response to the allegations of the petition[s]. . . . We

---

[2]In pertinent part, the attorney told the court only this: "I have had the opportunity to discuss the seriousness of this matter with this young man and possible consequences that are resulting from this type of activity and where it will eventually lead. . . . Also, I made him aware of the fact that the recommendation was a ranch recommendation. However, the court does not have to follow that recommendation. Committing him to the California Youth Authority is an option that is available to the court by virtue of the seriousness of the offense [sic], and that is why he is before the court. But in talking to Jimmy, I think that he recognizes that he can no longer continue to violate court orders or to continue to get in [sic] this type of conduct. . . . I would ask the court in this case to strongly consider following the recommendations of the probation officer."

thus do not believe it reasonably probable that such admonishment would have persuaded [him] to deny the truth of the allegations. It thus appears that insofar as the record . . . establish[es], he was not prejudiced by the failure of the court to advise him of the consequences of his admission and he is entitled to no relief on *Boykin-Tahl* grounds." (19 Cal.3d at pp. 325-326.)

The application of this language to the record *on appeal* requires that we affirm the order. ▉ Recognizing the deficiencies of that record with regard to prejudice, appellant has included in his opening brief a sworn declaration in which he attempts to show that he was prejudiced and why.[3] He also states his view that he must do this because, by his interpretation of *Ronald E.,* the decision holds that "*Boykin-Tahl* relief should be sought through a direct appeal rather than the collateral route of habeas corpus" (citing *In re Ronald E., supra,* 19 Cal.3d at pp. 322-323, 325, fns. 3 and 8). Against the event that we disagree with this view, he requests that the appeal be alternatively "treated as a petition for a writ of habeas corpus, and that the *Boykin-Tahl* issue be decided on the merits on that basis."

Having decided the "*Boykin-Tahl* issue" on the appeal proper, we must dispose of appellant's request that the appeal be alternatively treated as a petition for habeas corpus supported by his declaration. *Ronald E.* does not preclude us from granting this request (as indicated above), and we do so. We nevertheless deny the thus-conceived petition, summarily but without prejudice to its renewal in conventional habeas corpus context, by reason of procedural complications which now attend it at its present stage. The complications have developed because appellant made no effort to ascertain, nor to inquire, whether the request might be granted; it consequently came down to oral argument without having been urged or challenged on its merits, or granted; and we are not now inclined to defer action on the appeal until the issue has been joined, on the now-emergent petition for habeas corpus, by the necessary issuance of an alternative writ or an order to show cause.

---

[3]As pertinent here, the declaration recounts the juvenile court's failure to inform him of the possibility of a CYA commitment and continues: "At the time I admitted the petition [*sic*], therefore, I was completely unaware of the consequences of my admission. Nor was I aware of these consequences independently, from any source other than the court. If I had been aware of the consequences at the time I admitted the petition [*sic*], I would not have done so, and I would have insisted on my right to go to a trial in this matter. I do believe that, if I had been tried in this case, . . . it is reasonably probable that I would not have been committed to the Youth Authority as has now occurred."

This result expresses the message that counsel desiring to petition for habeas corpus in conjunction with a direct appeal, by way of exercising an alternative remedy which will permit exposition of crucial matters not shown in the record conventionally made on the appeal, would be well advised to file a separate petition which will command timely disposition by the appellate court under its separate number. Such disposition has not been made in this case because the incipient petition was virtually invisible, in the context of the appeal, until too late.

Counsel will have in mind that our decision affirming the juvenile court's order will not become final in this court for 30 days, but that our summary denial of the alternatively treated petition for habeas corpus is final forthwith. (Rule 24(a), Cal. Rules of Court.) If petitioner again seeks habeas corpus relief from the *Boykin-Tahl* error claimed, he will find it advisable to allege issuable facts rather than conclusions of law. (See, e.g., the last sentence of his present declaration as quoted in fn. 3, *ante.*)

The order is affirmed. The appeal is alternatively treated as a petition for a writ of habeas corpus, which is denied without prejudice to its renewal as such.

On June 18, 1979, the opinion was modified to read as printed above.