[Crim. No. 23014. Aug. 18, 1983.]

THE PEOPLE, Plaintiff and Respondent, v.
RONNIE LEE FAIN, Defendant and Appellant.

COUNSEL

Gordon Orlick, under appointment by the Supreme Court, for Defendant and Appellant.

George Deukmejian and John K. Van de Kamp, Attorneys General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Robert F. Katz and Craig E. Veals, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**BROUSSARD, J.**—Defendant appeals a conviction of three counts of assault with a deadly weapon, arising out of an incident in June 1978, in which

he recovered at gunpoint money he had lost in a poker dice game. The trial court sentenced him to six years imprisonment, the term to run consecutively to a sentence of life imprisonment (with possibility of parole) defendant was then serving for second degree murder in Nevada. Defendant contends, and we agree, that under Penal Code section 669, as it read in 1978, his California sentence should run concurrently to his Nevada life term. Therefore we remand this cause to the trial court for resentencing.

On June 20, 1978, defendant and three other men—Fred Maestas, Robert Steen and Albert Watkins—played poker dice in the Red Baron Bar in Monrovia. Defendant lost $15 of his own money and $20 he borrowed from the barmaid. He left the game, encountered the barmaid, who told him he had been cheated, and went to his motel room to get a gun. After returning to the bar, defendant struck Maestas with the butt of the gun and ordered Maestas and Steen to put their money on the pool table, and they complied. Watkins came out of the restroom and, on defendant's direction, also put his money on the table. Defendant ordered the three men into the restroom, and struck Steen twice with the gun while they walked to the room. He then took the money from the pool table and left.

In May of 1980 defendant was convicted of second degree murder in Nevada and sentenced to life imprisonment. Under Nevada law, he is eligible for parole after serving five years. (7 Nev. Rev. Stats., ch. 200.030, subd. 5.)

Defendant was then returned to California and charged with three counts of robbery, each count including an enhancement for use of a firearm. In response to that charge, defense counsel relied on *People* v. *Rosen* (1938) 11 Cal.2d 147 [78 P.2d 727, 116 A.L.R. 991], which held that forcible recapture of money lost in an illegal gambling game is not robbery because "the law recognizes no title or right to possession in the winner" (p. 150). ■ ■ ■ ■ Upon request of both the prosecution and the defense, the trial court instructed the jury that assault with a deadly weapon was a lesser included offense within the accusatory pleading.[1] The jury returned a verdict finding defendant guilty of three counts of assault with a deadly weapon.

---

[1] At the time of trial the California decisions were in conflict as to whether assault with a deadly weapon is a necessarily included offense under a pleading charging robbery with use of a firearm. In *People* v. *Wolcott* (1983) 34 Cal.3d 92, 102 [192 Cal.Rptr. 748, 665 P.2d 520], we resolved that conflict and held that it was not an included offense.

To convict a defendant of an uncharged offense not included in the accusatory pleading is a denial of due process unless the defendant waives his right to be advised of the charge. (*People* v. *West* (1970) 3 Cal.3d 595, 612 [91 Cal.Rptr. 385, 477 P.2d 409].) However, a defendant who requests an instruction on a lesser offense waives any objection that he had no notice of that charge or opportunity to defend against it. (*People* v. *Ramos* (1972) 25 Cal.App.3d 529, 538-539 [101 Cal.Rptr. 230].)

The trial court sentenced defendant to six years in prison, less credit for time served, good time, and work time.[2] It ordered that the sentence run consecutively to the Nevada prison sentence.

### I.

■ In ordering the California sentence to be served consecutively to the Nevada life term, the court violated Penal Code section 669. In 1978, when defendant's California crimes were committed, section 669 stated that: "When any person is convicted of two or more crimes, whether in the same proceeding or court or in different proceedings or courts, and whether by judgment rendered by the same judge or by different judges, the second or other subsequent judgment shall direct whether the terms of imprisonment or any of them to which he is sentenced shall run concurrently, or [consecutively] . . . provided, however, *if the punishment for any of said crimes is expressly prescribed to be life imprisonment, whether with or without possibility of parole, then the terms of imprisonment on the other convictions, whether prior or subsequent, shall be merged and run concurrently with such life term.*" (Italics added.)[3]

This statutory language is clear. If a defendant is convicted of two crimes, and the punishment for one "is expressly prescribed to be life imprisonment," the imprisonment imposed for the other "shall be merged and run concurrently with such life term." The present case falls within this language. Defendant has been convicted of two crimes, second degree murder and assault with a deadly weapon, and the punishment for the murder is expressly fixed at life imprisonment. By the terms of the statute, the sentence for assault with a deadly weapon should run concurrently with the murder.

If both terms of imprisonment were to be served in California, the decision in *People* v. *Salas* (1978) 77 Cal.App.3d 600 [143 Cal.Rptr. 755],

---

[2]The sentence was computed as follows: (a) Four years, the upper term, for count III (assault with a deadly weapon on Maestas); (b) one-third of the middle term of three years for count II (Steen), to run concurrently with count III; (c) one-third of the middle term of three years for count I (Watkins), to run consecutively to count III; (d) a one-year enhancement based on a prior conviction. Defendant received credit for 315 days in custody awaiting trial and 157 days of good time/work credit.

We note that the trial court incorrectly sentenced defendant as to count II; the full term, rather than one-third of it, is to be imposed concurrently. This error can be corrected upon resentencing.

[3]The 1978 Legislature amended section 669 to grant the trial court discretion to impose consecutive sentences. (Stats. 1978, ch. 579, § 28, p. 1987.) The amending statute expressly provided that it would apply only to crimes committed on or after January 1, 1979. (Stats. 1978, ch. 579, § 48, p. 1998.) The prior version of section 669 governs sentencing in the present case.

would be directly on point. The trial court in that case sentenced the defendant, a life prisoner, to a consecutive term for robbery; the Court of Appeal reversed on the ground that "Penal Code section 669 requires that all sentences for other crimes run concurrently with an express life term." (P. 608.)

The present controversy arises only because one of defendant's terms of imprisonment must be served in Nevada. We addressed the application of section 669 to a similar case in *People* v. *Sewell* (1978) 20 Cal.3d 639 [143 Cal.Rptr. 879, 574 P.2d 1231]. *Sewell* applied the statute to hold a California life term ran concurrently with a prior Maryland life sentence.

Our opinion stated: "Initially, we note that nothing in the language of section 669 suggests that both life terms must be imposed by *California* courts before their merger becomes mandatory. Rather, the policy implicit in section 669 indicates that the Legislature deliberately chose to leave discretion in the California parole authorities to determine when a prisoner should be released once the minimum seven-year sentence for a single life term has been served. This legislative policy vesting discretion in the parole authorities would be defeated by an interpretation of section 669 which upholds the imposition of consecutive life sentences in the present case. The defendant, for example, may serve seven years or more in a Maryland prison and then be released by that state's authorities because he is considered rehabilitated or no longer a danger to society. If the Maryland sentence is not recognized, California prison authorities would have no choice but to imprison defendant here for an additional seven years. Parole authorities would lack discretion to release defendant until another minimum seven-year sentence had been fully served even if they concluded that further imprisonment could serve no useful purpose. This does not appear to have been the intent of the Legislature in drafting section 669." (Pp. 642-643.)

The Attorney General points out that *Sewell*'s explanation of the statutory purpose applies only to a case in which the prisoner is under a California life sentence for which California authorities have authority to grant parole.[4] In the present case, which involves a life sentence from another state and a determinate California sentence, concurrent sentences would not preserve the discretion of California parole authorities because they have no discre-

---

[4]The Attorney General observes that all prior cases involving the merger of a lesser term into a life sentence were instances in which the life sentence was imposed by a California court. In fact, with the exception of *People* v. *Sewell, supra,* 20 Cal.3d 639, all are cases in which both sentences were imposed by California courts. *Sewell* is the only decision in which one sentence was imposed by the court of another jurisdiction, and in *Sewell* both California and the other jurisdiction imposed life terms. The setting of the present case—a foreign life term and a lesser California sentence—has not been discussed in any prior case.

tion to preserve. Concurrency in this case might protect the discretionary power of Nevada parole authorities, but the Attorney General, citing the quoted language from *Sewell,* claims the Legislature did not intend to protect the parole discretion of other states.[5]

The issue, we believe, can be resolved without difficulty. Section 669 by its terms applied to all cases in which a defendant under life sentence, whether in California or elsewhere, now faces sentence for some additional crime. Although one statutory purpose may have been to protect the discretion of California parole authorities, it contained no language limiting its reach to cases falling within that purpose. To the contrary, section 669 expressly applied to a defendant sentenced to life imprisonment without possibility of parole, even though requiring concurrent sentences in such a case will not preserve parole discretion. In short, the section as written is not confined to the particular purpose of protecting parole discretion, and since application of the section according to its terms will neither frustrate that purpose nor yield any unintended or anomalous consequences, we conclude that it should be so applied. Defendant's sentence should therefore run concurrently with his Nevada life term.

## II.

■ Defendant contends that the evidence is insufficient to sustain his conviction for assault with a deadly weapon on Watkins (count I of the information) because it does not prove his intent to commit a battery on Watkins. The record shows that defendant pointed a gun at Watkins from a distance of about five feet, ordered Watkins to put money on the pool table and then accompany the other victims to the restroom. The jury could reasonably infer from the fact that defendant aimed his gun and demanded compliance with his instructions that he had the requisite intent to use the gun if the victims failed to comply. (*People* v. *Duncan* (1945) 72

---

[5]The Attorney General goes on to urge that literal application of section 669 to the present case could produce an anomalous result: that if Nevada authorities decided to release defendant after he had served less than his six-year California term, the remainder of the California term would go unserved. The statute does not compel that result. In *In re Patterson* (1966) 64 Cal.2d 357, 362 [49 Cal.Rptr. 801, 411 P.2d 897], when we ordered defendant transferred to Texas under section 669 to serve a concurrent sentence, we noted that "[i]f at the time of his release by Texas a portion of the California sentence remains to be served, he should be returned to this state." In like fashion, if Nevada releases the present defendant before he has served his concurrent California term, he should be returned to this state to serve the balance of his term.

Cal.App.2d 423, 427 [164 P.2d 510]; see *People* v. *Laya* (1954) 123 Cal.App.2d 7, 16 [266 P.2d 157].)[6]

## III.

Defendant contends that the trial court improperly considered his prior conviction for escape both as an enhancement and as a reason for sentencing him to the upper term of four years in count III for assault with a deadly weapon on Maestas.[7] ■ Defendant is correct, and the trial court is accordingly instructed, upon remand, that it "may not impose an upper term by using the fact of any enhancement upon which sentence is imposed under Section 667.5 . . . ." (Pen. Code, § 1170, subd. (b); see also *People* v. *Lambeth* (1980) 112 Cal.App.3d 495, 498-499 [169 Cal.Rptr. 193].)

## IV.

Before defendant admitted his prior felony conviction for escape, he was advised by the deputy district attorney that "if you are acquitted of the robbery charges . . . [your admission] is of no consequence at all. . . . If you are convicted, however, . . . to whatever possible sentence you would get as a result of being convicted of the robbery case, . . . one year consecutive would be added to that." ■ Defendant complains that the advice was misleading and incomplete, in that it did not explain that the prior conviction could be used to enhance a sentence for the lesser offense of assault with a deadly weapon.

■ Before a court accepts an accused's admissions that he had suffered a prior felony conviction, the accused is entitled to be advised of the precise increase in the term or terms which might be imposed as a consequence of the admission of a prior felony conviction or convictions. Failure to so

---

[6]Defendant testified that the gun was unloaded. The threat to shoot with an unloaded gun is not an assault, since the defendant lacks the present ability to commit violent injury. (*People* v. *Lee Kong* (1892) 95 Cal. 666, 669 [30 P. 800]; see *People* v. *Wolcott, ante,* 34 Cal.3d 92 at p. 99.) The jury, however, may not have believed defendant's testimony in this regard, as Steen had testified that at one point defendant had fired a round from the rifle.

In any case, even an unloaded gun can be used as a club or bludgeon. (See *People* v. *Aranda* (1965) 63 Cal.2d 518, 532 [47 Cal.Rptr. 353, 407 P.2d 265]; *People* v. *Mosqueda* (1970) 5 Cal.App.3d 540, 544 [85 Cal.Rptr. 346].) Defendant struck both Maestas and Steen with the gun, and approached sufficiently near Watkins to have the present ability to injure Watkins in the same manner.

[7]In sentencing defendant on count III, the court said: "I am setting the high term because violence was involved upon Mr. Maestes [*sic*]; there was a great deal of threat of bodily harm to him, and because of the defendant's record of sustained matters, including the sustained escape matters. [¶] I can only conclude that Mr. Fain is an extremely dangerous man when I read his report of sustained matters and that he has engaged in a pattern of conduct with his life which makes him a danger to society . . . ."

advise an accused is error which, if prejudice appears, requires the setting aside of a finding of the truth of an allegation of a prior conviction. (*In re Yurko* (1974) 10 Cal.3d 857, 864 [112 Cal.Rptr. 513, 519 P.2d 561].) In *In re Ronald E.* (1977) 19 Cal.3d 315, 321 [137 Cal.Rptr. 781, 562 P.2d 684], we explained that "[u]nlike an uninformed waiver of the specified constitutional rights which renders a plea or admission involuntary and requires that it be set aside, an uninformed waiver based on the failure of the court to advise an accused of the consequences of an admission constitutes error which requires that the admission be set aside only if the error is prejudicial to the accused."

Subsequent decisions have applied the requirement of prejudice set forth in *Yurko* and *Ronald E.* In *In re Jimmy M.* (1979) 93 Cal.App.3d 369 [155 Cal.Rptr. 534], defendant was not expressly advised of a possible Youth Authority commitment as a possible consequence of his admission of allegations of being a person described in Welfare and Institutions Code section 602. Adopting the language of *Ronald E.*, the court found no prejudice since the defendant could not establish he would not have been committed or he would have responded differently to the allegations had the court properly advised him, prior to his admission.

In a situation closer to the case at hand, in *People* v. *Jones* (1979) 98 Cal.App.3d 694 [159 Cal.Rptr. 641],* defendant was misadvised by the court and his attorney that his sentence was governed by the Uniform Determinate Sentencing Act rather than the Indeterminate Sentence Law, which imposed a longer sentence. The court nevertheless upheld the sentence, reasoning that not even the most meticulously accurate advice would have dissuaded the defendant from admitting his prior conviction.

Similarly, in *People* v. *English* (1981) 116 Cal.App.3d 361 [172 Cal.Rptr. 122], defendant contended that he was not specifically advised as to how his punishment would be enhanced as a result of his admission of prior convictions. Quoting *Ronald E.*, the court found no prejudice to warrant reversal since the defendant had not contended that had he been properly admonished, he would not have admitted his prior convictions.

 We agree with defendant that the prosecutor's advice was misleading, and could have been misunderstood to mean that the one-year enhancement applied only if defendant was convicted of robbery. The record, however, does not reflect that he was prejudiced by this advice, that he in fact misunderstood the prosecutor's remark or that if correctly advised, he

---

*Disapproved on other grounds in *People* v. *Black* (1982) 32 Cal.3d 1 [184 Cal.Rptr. 454, 648 P.2d 104].

would have denied the prior conviction. The record also fails to show that he has any defense to the use of prior conviction as an enhancement or for impeachment. Therefore, defendant's admission need not be set aside.

The cause is remanded to the superior court with directions to set aside the sentence and to resentence defendant in accordance with the views expressed in this opinion. In all other respects, the judgment is affirmed.

Bird, C. J., Mosk, J., Richardson, J., Kaus, J., Reynoso, J., and Grodin, J., concurred.