Filed 12/8/21  P. v. Lopez CA3
Opinion following transfer from Supreme Court

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| THE PEOPLE, | C087357 |
| Plaintiff and Respondent, | (Super. Ct. No. CRF1758041) |
| v. | OPINION ON TRANSFER |
| JASON MICHAEL LOPEZ, | |
| Defendant and Appellant. | |

A jury convicted defendant Jason Michael Lopez of the crimes of attempted shooting at an occupied vehicle (count 1), active participation in a criminal street gang (Pen. Code, § 186.22, subd. (a)—count 5), and possession of a firearm by a person who has been convicted of a felony (count 7).[1]  The jury found true that defendant committed counts 1 and 7 for the benefit of, at the direction of, or in association with a criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct

---

[1]  Undesignated statutory references are to the Penal Code.

1

by gang members.  (§ 186.22, subd. (b)(1).)  The jury did not reach a verdict on three counts of assault with a semiautomatic firearm (counts 2-4), one count of carrying a loaded firearm with the intent to commit a felony (count 6), and one count of possession of ammunition by a convicted felon (count 8).  The prosecution subsequently dismissed those charges.

In a bifurcated proceeding, the trial court found true that defendant had two prior serious felony convictions, two prior strike offenses, and one prior prison term.

The court sentenced defendant to a total term of 20 years plus 50 years to life in prison.

On appeal, defendant argued:  (1) the trial court improperly instructed the jury with respect to count 1; (2) the trial court erred in admitting photographs taken from a cell phone and his Facebook account; (3) his trial counsel rendered ineffective assistance by failing to move to suppress the cell phone photographs; and (4) the prosecution's gang expert violated defendant's right to confrontation by presenting case-specific hearsay evidence regarding other individual's gang affiliations.  In our prior unpublished opinion, we affirmed the judgment.

Defendant petitioned our Supreme Court for review.  The Supreme Court granted review and deferred the matter pending consideration and disposition of a related issue in *People v. Garcia*, S250670, and *People v. Valencia*, S250218, or pending further order of the court.

On July 1, 2021, our Supreme Court issued *People v. Valencia* (2021) 11 Cal.5th 818 (*Valencia*).

On September 15, 2021, our Supreme Court transferred the matter back to this court, with directions to vacate our decision and reconsider the cause in light of *Valencia*. We vacated our opinion on September 21, 2021.  The parties have filed supplemental briefs.

2

We conclude *Valencia* does not change the result and reissue our prior opinion affirming the judgment, with revisions to reflect the parties' briefing and arguments related to *Valencia*.

## I.  BACKGROUND

On May 8, 2016, Victor stopped at a liquor store.  As he walked out, defendant asked him if he was from around there.  Victor said yes.  Defendant asked, "Do you bang?"  Victor said "no" and left.

Later that day, Victor and two other men went to buy food for a barbecue.  Victor drove.  When he stopped at a stop sign at an intersection, he noticed a black SUV that was stopped even though it had the right of way and no stop sign.

Co-defendant Stephon Ramirez, who was in the passenger seat of the black SUV, pointed a semiautomatic firearm at Victor's vehicle.  Defendant was jumping up and down in the driver's seat and saying, "pop it, pop it."  Ramirez pulled the trigger several times and racked the weapon several times.  The gun did not fire.

Based on a hypothetical set of facts that mirrored the evidence, the prosecution's firearms expert opined that there was a malfunction that the operator of the weapon was trying to clear.

## II.  DISCUSSION

*A.  Instructions on Attempted Shooting at an Occupied Vehicle*

With respect to the crime of attempted shooting at an occupied vehicle, the trial court instructed the jury that the People had to prove:  "One, the defendant took a direct but ineffective step toward committing a shooting at an occupied vehicle[, and] two, the defendant intended to commit a shooting at [an] occupied vehicle."

The trial court denied defendant's request for a special instruction that the gun had to be loaded in order for the jury to find him guilty of this offense.[2] In explaining its reasoning, the court stated defendant "had to think it was loaded or he had to be trying to shoot and he attempted, and that's the reason it failed."[3] On appeal, defendant argues the trial court erred in failing to instruct the jury sua sponte on what he argues is an essential element of the offense of attempted shooting at an occupied vehicle—that defendant had to *believe* the firearm was loaded. We disagree.

As the People note, "[a]n attempt to commit a crime consists of two elements: a specific intent to commit the crime, and a direct but ineffectual act done toward its commission." (§ 21a.) The jury was instructed on attempted shooting at an occupied vehicle accordingly. The jury was instructed on what it means to take a direct step, including that "[i]t is an immediate step that puts the plan in motion so that the plan would have been completed if some circumstance outside the plan had not interrupted the attempt." The court further instructed the jury that "[t]he specific intent required for Count 1—[a]ttempted shooting at an occupied vehicle—is that the defendant intended to shoot a firearm at an occupied vehicle." The court also instructed the jury on finding defendant guilty as an aider and abettor. The court explained the necessary mental state as follows: "For you to find [defendant] guilty of any crime based on a theory that he

_____

[2] Defendants cannot escape liability for attempt to commit a crime "because the criminal act they attempted was not completed due to an impossibility which they did not foresee: 'factual impossibility is not a defense to a charge of attempt.' " (*People v. Reed* (1996) 53 Cal.App.4th 389, 396.)

[3] The court did agree to instruct the jury that it had to find the firearm was loaded to find the defendants guilty of assault with a semiautomatic firearm (counts 2-4). "An assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." (§ 240.) "The threat to shoot with an unloaded gun is not an assault, since the defendant lacks the present ability to commit violent injury." (*People v. Fain* (1983) 34 Cal.3d 350, 357, fn. 6.)

4

aided and abetted Mr. Ramirez, you must also find [the] mental state that [defendant] knew that Mr. Ramirez intended to commit the crime, and the specific intent that before or during the commission of the crime, [defendant] intended to aid and abet Mr. Ramirez in committing the crime." In sum, the jury was instructed on the elements of the offense.

" ' " 'It is settled that in criminal cases, even in the absence of a request, a trial court must instruct on general principles of law relevant to the issues raised by the evidence' " and " 'necessary for the jury's understanding of the case.' " ' " (*People v. Molano* (2019) 7 Cal.5th 620, 667.) An instruction that the defendant needed to believe that the gun was loaded to be convicted of attempted shooting at an occupied vehicle appears to be a pin-point instruction in that it would "relate particular facts to a legal issue in the case." (*People v. Saille* (1991) 54 Cal.3d 1103, 1119.) Such an instruction is not required absent a defendant's request. (*Ibid*.) Furthermore, " '[a] legal concept that has been referred to only infrequently, and then with "inadequate elucidation," cannot be considered a general principle of law such that a trial court must include it within jury instructions in the absence of a request.' " (*Molano, supra,* at p. 668.) Defendant concedes he has not found *any* case that concludes as much but, he contends, "*logic dictates* that when the defendant believes the firearm is unloaded or otherwise inoperable[,] pulling the trigger does not constitute the crime of attempted shooting at an occupied vehicle." (Italics added, fn. omitted.) In other words, a defendant who believes a firearm is unloaded or inoperable cannot specifically intend that the firearm expel a bullet at an occupied vehicle. Regardless, defendant's "theory falls far short of a well-established rule that would have required a sua sponte instruction. Because defendant never requested such an instruction, he has forfeited the issue." (*Id*. at p. 669.)[4]

---

[4] On reply, defendant presents this as a "knowledge element" rather than a question of specific intent and cites *People v. Rogers* (1971) 5 Cal.3d 129, 137, superseded by statute

*B.      Admission of Photographs*

Defendant raises two challenges relating to the admission of photographs taken from a cell phone and his Facebook account.  He contends there was an insufficient foundation of authenticity to support their admission.  He also contends the cell phone photographs were inadmissible because they were seized pursuant to a stale warrant and there was no foundation that the photographs were from the time period set forth in the warrant.  Anticipating forfeiture of any right to suppress the photographs, he argues his trial counsel provided ineffective assistance by failing to bring the motion prior to trial.  We conclude the trial court did not err in admitting the photographs.

*1.      Trial Court Proceedings*

Two cell phones were seized from defendant's SUV.  Anthony Herrera, a detective for the City of West Sacramento, testified that he obtained a search warrant and initially took the phones to Investigator John Sadlowski at the Yolo County District Attorney's office for a forensic evaluation, but Sadlowski was unavailable.  On August 3, 2016, Herrera took the phones to Probation Officer Sergio Pimentel.  Pimentel extracted information from the Samsung phone that day and provided it to Herrera the next day.  This information included People's Exhibits 76 through 96.

Herrera also testified that he later obtained a second search warrant and then brought the phones to Sadlowski.  Sadlowski testified earlier in the trial that he performed an extraction on the Samsung phone on July 21, 2016.  Like Pimentel, Sadlowski testified he was unable to perform an extraction on the second phone.  Herrera

as stated in *People v. Martinez* (2018) 4 Cal.5th 647, 650, which held the trial court erred by failing to instruct on the element of knowledge in the context of the offense of transporting marijuana.  This characterization of the issue is no more persuasive.  In *Rogers*, our Supreme Court relied in part on its previous opinion explaining that knowledge was an essential element of the transportation offense.  (*Id*. at p. 133.)  Here, defendant cites no authority indicating knowledge is an element of attempted shooting at an occupied vehicle, and we cannot conclude that it is beyond what has already been subsumed in the instructions.

6

testified Exhibits 76 through 96 were pictures he observed from either data extraction. Additionally, he took screenshots of photographs from defendant's Facebook account.

Defense counsel later argued the warrant Pimentel conducted his search under was stale under section 1534, subdivision (a), which provides that "[a] search warrant shall be executed and returned within 10 days after date of issuance. A warrant executed within the 10-day period shall be deemed to have been timely executed and no further showing of timeliness need be made. After the expiration of 10 days, the warrant, unless executed, is void." Counsel stated the warrant was signed by the judge on July 21, 2016, which was more than 10 days before Pimentel's extraction from the cell phone.

Defense counsel indicated the second search warrant was signed on August 11, 2016. Defense counsel also argued the prosecution had not laid the foundation that the photographs were taken between December 1, 2015, and May 31, 2016, which he represented was a time limitation written into the warrant.

The court asked why these arguments were not raised prior to trial. At the start of trial, Sadlowski appeared on the prosecution's witness list but Pimentel did not. The People sought permission to add Pimentel to the witness list during trial.

The People responded that the issue was litigated in the previous trial and explained that Sadlowski testified in that trial that the July 21, 2016 extraction date on his report was incorrect and he did not receive the cell phone until after Pimentel's search. The prosecution also represented that there was an extension on both warrants and they would not be stale on their face. The trial court found defendant's motion was untimely.

Most of exhibits 76 through 96 were subsequently shown to the jury. Detective Barrantes, the prosecution's gang expert, testified regarding the Norteño gang and its Broderick Boys subset. He also testified regarding the content of these photographs, which depicted gang-related symbols and defendant and other gang members wearing gang-related clothing and making hand signs used by the gang.

7

Detective Barrantes was also shown the screenshots of photographs from defendant's Facebook account taken by Detective Herrera. Detective Barrantes testified that these photographs also depicted gang-related symbols and defendant and some of the same gang members as the other photographs wearing gang-related clothing and making hand signs used by the gang.

2. *Authentication*

Defendant contends the trial court erred in admitting images obtained from his Facebook account and the cell phone without sufficient foundation of their authenticity. We disagree.

"Authentication of a writing, including a photograph, is required before it may be admitted in evidence. [Citations.] Authentication is to be determined by the trial court as a preliminary fact [citation] and is statutorily defined as 'the introduction of evidence sufficient to sustain a finding that it is the writing that the proponent of the evidence claims it is' or 'the establishment of such facts by any other means provided by law' [citation]." (*People v. Goldsmith* (2014) 59 Cal.4th 258, 266 (*Goldsmith*).)

The court in *Goldsmith* explained, "the proof that is necessary to authenticate a photograph or video recording varies with the nature of the evidence that the photograph or video recording is being offered to prove and with the degree of possibility of error. [Citation.] The first step is to determine the purpose for which the evidence is being offered. The purpose of the evidence will determine what must be shown for authentication, which may vary from case to case. [Citation.] The foundation requires that there be sufficient evidence for a trier of fact to find that the writing is what it purports to be, i.e., that it is genuine for the purpose offered. [Citation.] Essentially, what is necessary is a prima facie case. 'As long as the evidence would support a finding of authenticity, the writing is admissible. The fact conflicting inferences can be drawn regarding authenticity goes to the document's weight as evidence, not its admissibility.' " (*Goldsmith, supra*, 59 Cal.4th at p. 267.) The requisite authentication of photographic

8

evidence need not be provided by the person taking the photograph. (*Id*. at p. 268.) Rather, sufficient foundation may be provided by "other witness testimony, circumstantial evidence, content and location." (*Ibid*.)

We review the trial court's ruling on the admissibility of evidence for an abuse of discretion, and will not disturb the trial court's discretion unless it is shown to have been exercised " 'in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice.' " (*Goldsmith*, *supra*, 59 Cal.4th at p. 266.)

A similar claim was made and rejected in *People v. Valdez* (2011) 201 Cal.App.4th 1429 (*Valdez)*. The court analyzed the content of the defendant's MySpace social media internet page, including photographs and comments. (*Id*. at p. 1435.) The court explained: "[T]he writings on the page and the photograph corroborated each other by showing a pervading interest in gang matters, rather than an anomalous gesture. Importantly, this consistent, mutually reinforcing content of the page helped authenticate the photograph and writings, with no evidence of incongruous elements to suggest planted or false material. Other key factors include that the evidence strongly suggested the page was Valdez's personal site . . . and that the page was password protected for posting and deleting content, which tended to suggest Valdez, as the owner of the page, controlled the posted material." (*Id*. at p. 1436.)

The court concluded: "Although Valdez was free to argue otherwise to the jury, a reasonable trier of fact could conclude from the posting of personal photographs, communications, and other details that the MySpace page belonged to him. Accordingly, the trial court did not err in admitting the page for the jury to determine whether he authored it." (*Valdez, supra*, 201 Cal.App.4th at p. 1435.)

Similarly, in *In re K.B*. (2015) 238 Cal.App.4th 989 (*K.B*.), the court found photographs from a cell phone, including screenshots of photographs from an Instagram account, had been sufficiently authenticated based on the testimony of the investigating officers that the same photographs were seen on defendant's Instagram account and he

was wearing similar clothing, at the same location, and with several of the same people as in the photographs at the time of his arrest.  (*Id*. at pp. 994, 997-998.)

Defendant argues *People v. Beckley* (2010) 185 Cal.App.4th 509 (*Beckley*) is on point.  In *Beckley*, the trial court admitted a photograph purportedly showing a witness making a gang sign for impeachment purposes.  (*Id*. at p. 514.)  A detective testified that he downloaded the photograph from a defendant's MySpace page.  (*Ibid*.)  In the absence of testimony from someone with personal knowledge that the photograph truly portrayed the witness flashing a gang sign or from an expert that the picture was not a composite or faked, the court in *Beckley* concluded it was not properly authenticated, and therefore, was not admissible.  (*Id*. at pp. 515-516.)  The court observed that digital photographs can be altered and " '[a]nyone can put anything on the Internet.  No web-site is monitored for accuracy and *nothing* contained therein is under oath or even subject to independent verification absent underlying documentation.  Moreover, the Court holds no illusions that hackers can adulterate the content of *any* web-site from *any* location at *any* time.' " (*Ibid*.)

*Beckley* has been distinguished and its rationale rejected.  The court in *Valdez* distinguished *Beckley*.  "Here, in contrast, evidence of the password requirement for posting and deleting content distinguishes *Beckley*, as does the pervasive consistency of the content of the page, filled with personal photographs, communications, and other details tending together to identify and show owner-management of a page devoted to gang-related interests." (*Valdez, supra*, 201 Cal.App.4th at p. 1436.)

The court in *K.B.* was more critical.  "To the extent *Beckley*'s language can be read as requiring a conventional evidentiary foundation to show the authenticity of photographic images appearing online, i.e., testimony of the person who actually created and uploaded the image, or testimony from an expert witness that the image has not been altered, we cannot endorse it.  Such an analysis appears to be inconsistent with the most recent language in *Goldsmith* . . . .  [¶]  Furthermore, reading *Beckley* as equating

10

authentication with proving genuineness would ignore a fundamental principle underlying authentication emphasized in *Goldsmith*. In making the initial authenticity determination, the court need only conclude that a prima facie showing has been made that the photograph is an accurate representation of what it purports to depict. The ultimate determination of the authenticity of the evidence is for the trier of fact, who must consider any rebuttal evidence and balance it against the authenticating evidence in order to arrive at a final determination on whether the photograph, in fact, is authentic." (*K.B.*, *supra*, 238 Cal.App.4th at p. 997.)

We agree. Defendant further contends *Valdez* and *K.B.* are distinguishable because, unlike here, there was evidence of a password requirement as well as more details tending to identify the defendant as the owner and manager of the page. (See *K.B., supra*, 238 Cal.App.4th at p. 998; *Valdez, supra*, 201 Cal.App.4th at p. 1436.) We discern no rigid rule in *Valdez* or *K.B.* requiring testimony regarding passwords. Rather, what is important is that the detectives' testimony and the consistency between the Facebook photographs and the photographs extracted from defendant's cell phone were sufficient to make a prima facie case to justify the trial court's admission of the evidence. As in *Valdez*, defendant was free to argue otherwise to the jury or to introduce his own evidence. But the trial court did not abuse its discretion by admitting the evidence.

### 3. *Motion to Suppress*

Defendant argues the trial court erred in not hearing his motion to suppress the cell phone photographs. The time limits for bringing a motion to suppress for a felony offense are found in section 1538.5, subdivisions (h) and (i). Subdivision (i) generally provides, in relevant part, that "[i]f the property or evidence obtained relates to a felony offense initiated by complaint and the defendant was held to answer at the preliminary hearing, or if the property or evidence relates to a felony offense initiated by indictment, the defendant shall have the right to renew or make the motion at a special hearing relating to the validity of the search or seizure which shall be heard *prior to trial*." (§ 1538.5, subd.

11

(i), italics added.) Subdivision (h) provides an exception: "If, prior to the trial of a felony or misdemeanor, opportunity for this motion did not exist or the defendant was not aware of the grounds for the motion, the defendant shall have the right to make this motion during the course of trial." (§ 1538.5, subd. (h).)

Defendant argues, that "[g]iven the last-minute addition of Pimentel to the prosecution's witness list, *the opportunity* to challenge the validity of the search of the Samsung phone only arose during trial." (Italics added.) But defendant did not need Pimentel to testify at trial in order to have an opportunity to raise these issues prior to trial. Moreover, his counsel explained that if Officer Pimentel had been on the witness list, he would have raised these issues earlier. It thus appears defense counsel conceded he was aware of the grounds for the motion earlier and could have made it sooner. He simply chose not to do so because he apparently thought the motion was irrelevant and the evidence could not have been suppressed. This is not a ground under section 1538.5, subdivision (h) for making a mid-trial motion to suppress. Accordingly, the court did not err in denying the motion as untimely.

4. *No Ineffective Assistance of Counsel*

Defendant argues, alternatively, his counsel rendered ineffective assistance by failing to bring a motion to suppress prior to trial. To prevail on this claim, defendant "must establish not only deficient performance, i.e., representation below an objective standard of reasonableness, but also resultant prejudice. [Citation.] Tactical errors are generally not deemed reversible, and counsel's decisionmaking must be evaluated in the context of the available facts. [Citation.] To the extent the record on appeal fails to disclose why counsel acted or failed to act in the manner challenged, we will affirm the judgment 'unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation . . . .' [Citation.] Finally, prejudice must be affirmatively proved; the record must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

12

would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " (*People v. Bolin* (1998) 18 Cal.4th 297, 333.)

It appears from the record at least one tactical reason defense counsel had for not making a motion to suppress the photographs prior to trial was his belief that these photographs were in fact admissible, just not through the foundation laid by Pimentel. If he was correct in that belief, moving to suppress the evidence before trial would have been unlikely to result in the suppression of the evidence. Therefore, we cannot conclude on direct appeal that counsel did not have a reasonable tactical basis for not pursuing the suppression of this evidence, because we cannot determine on this record whether the motion had merit. Additionally, as to the assertion that some of the photographs were from outside the period on the warrant, defendant cites neither any warrant nor any portion of the exhibit setting forth the extracted information. We therefore cannot conclude this objection had any merit to it. Thus, defendant has failed to affirmatively demonstrate any prejudice. We reject defendant's assertion that his trial counsel was ineffective in not moving to exclude the photographs from the cell phone before trial.

C.    *Expert Testimony Regarding Gang Membership*

"As relevant here, the STEP [(California Street Terrorism Enforcement and Prevention)] Act created a substantive offense of active participation 'in any criminal street gang' ([]§ 186.22, subd. (a)), and a sentencing enhancement for a felony committed 'for the benefit of, at the direction of, or in association with any criminal street gang' ([]§ 186.22, subd. (b)(1)). [Citations.] The Act defines such a gang as 'any ongoing organization, association, or group of three or more persons, whether formal or informal, having as one of its primary activities the commission of one or more [enumerated offenses], . . . having a common name or common identifying sign or symbol, and whose members individually or collectively engage in, or have engaged in, a pattern of criminal gang activity.' ([]§ 186.22, subd. (f).) A ' "pattern of criminal gang activity" ' is separately defined as 'the commission of, attempted commission of, conspiracy to

13

commit, or solicitation of, sustained juvenile petition for, or conviction of two or more [enumerated] offenses, provided at least one of these offenses occurred after the effective date of this [Act] and the last of those offenses occurred within three years after a prior offense, and the offenses were committed on separate occasions, or by two or more persons . . . .' ([]§ 186.22, subd. (e).) The offenses comprising a pattern of criminal gang activity are referred to as predicate offenses." (*Valencia*, *supra*, 11 Cal.5th at p. 829, fn. omitted.)

The parties stipulated to convictions by defendant, Michael Reyes, Joe Moreno, Robert Vasquez, Orlando Ramos, and Kenneth Robinson.

Detective Barrantes testified that, based on his training and experience, he was of the opinion Reyes was a "documented" member of the Broderick Boys at the time he committed his offenses. Barrantes further explained his opinion was based on "reports, photographs, attire, and tattoos."

Barrantes testified that, based on his training and experience, he was of the opinion Moreno, Vasquez, and Ramos were active participants in the Broderick Boys at the time of their offenses. As to Moreno, Barrantes explained this opinion was based on "the police report, the association that he was with." As to Vasquez, Barrantes explained his opinion was based on "the photographs, the police reports, and tattoos." As to Ramos, the detective's opinion was based on "[t]he reports, tattoos, and his attire."

Similarly, Barrantes testified his opinion regarding whether Robinson was an active participant of the Broderick Boys at the time of his offenses was based on "reports, tattoos, and photographs."

Defendant argues the prosecution failed to limit the bases of Barrantes's testimony to admissible evidence, and that this error violated defendant's Sixth Amendment right of confrontation. We disagree that the alleged error violated the confrontation clause.

In *Crawford v. Washington* (2004) 541 U.S. 36, "the United States Supreme Court held, with exceptions not relevant here, that the admission of testimonial hearsay against

14

a criminal defendant violates the Sixth Amendment right to confront and cross-examine witnesses." (*People v. Sanchez* (2016) 63 Cal.4th 665, 670 (*Sanchez*).) "A statement is testimonial hearsay only if it is (1) hearsay under a traditional hearsay inquiry and (2) testimonial within the meaning of *Crawford* and its progeny." (*People v. Perez* (2018) 4 Cal.5th 421, 455.) Defendant's argument is based in part on *Sanchez*, in which the California Supreme Court "consider[ed] the degree to which the *Crawford* rule limits an expert witness from relating case-specific hearsay content in explaining the basis for his opinion." (*Sanchez*, *supra*, at p. 670.) "Case-specific facts are those relating to the particular events and participants alleged to have been involved in the case being tried." (*Id*. at p. 676.) In *Sanchez*, our Supreme Court said that "an expert may . . . '*rely* on hearsay in forming an opinion, and may tell the jury *in general terms* that he did so' without violating hearsay rules or the confrontation clause." (*Perez*, *supra*, at p. 456.) This is exactly what Detective Barrantes did. As the *Sanchez* court explained, "[t]here is a distinction to be made between allowing an expert to describe the type or source of the matter relied upon as opposed to presenting, as fact, case-specific hearsay that does not otherwise fall under a statutory exception. [¶] What an expert *cannot* do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception." (*Sanchez, supra,* at p. 686; see also *People v. Leon* (2015) 61 Cal.4th 569, 603 ["The hearsay problem arises when an expert simply recites portions of a report prepared by someone else, or when such a report is itself admitted into evidence"].) Barrantes did not relate as true any out-of-court statements in stating his opinion. He made clear that his opinions relied on hearsay, but he conveyed this in the most general terms without stating what exactly was contained in any report or photograph that was not otherwise offered into evidence. (See *People v. Garton* (2018) 4 Cal.5th 485, 507 [coroner's statements only conveyed to the jury in general terms that she relied on autopsy report and did not communicate hearsay to the jury].) "*Sanchez* is concerned with an expert's *testimony* about case-specific

15

hearsay, not an expert's *reliance* on such information." (*People v. Anthony* (2019) 32 Cal.App.5th 1102, 1140.)

In contrast, in *Valencia*, an expert related the facts of three predicate offenses even though his only knowledge of these offenses came from conversations with other officers and a review of police reports. (*Valencia*, *supra*, 11 Cal.5th at p. 827.) Our Supreme Court held that "the commission of . . . predicate offenses[] must be proven by independently admissible evidence" and "such proof may not be established solely by the testimony of an expert who has no personal knowledge of facts otherwise necessary to satisfy the prosecution's burden." (*Id.* at p. 826.) Put differently, "the particular facts offered to prove predicate offenses as required by the STEP Act are not the sort of background hearsay information about which an expert may testify. Competent evidence of those particulars is required." (*Id.* at p. 839.) There was no dispute that the improperly admitted hearsay was testimonial and thus the error was assessed for harmless beyond a reasonable doubt. (*Id.* at p. 840.)

Here, the parties stipulated to the commission of the predicate offenses and competent evidence of those particulars was admitted as to Robinson and Vasquez, but not Ramos, Moreno, and Reyes. An officer with personal knowledge testified regarding the facts of the predicate offenses committed by Robinson and Vasquez. After Barrantes opined that Robinson was an active participant in the Broderick Boys gang at the time of his offense based on "reports, tattoos, and photographs," the prosecution directed Barrantes to look at certain photographic exhibits. Barrantes identified Robinson and testified regarding his tattoos that signified membership in the Broderick Boys. After opining that Vasquez was an active participant in the Broderick Boys gang at the time he committed his offense based on "the photographs, the police reports, and tattoos," Barrantes also identified Vasquez in these exhibits and testified as to which of his tattoos signified his membership in the Broderick Boys. Earlier, Barrantes had testified

16

regarding additional photographs of Robinson wearing gang-related clothing and showing gang signs.

The *Valencia* court stated, "[a] gang expert may still render an opinion regarding the gang membership of the perpetrator of a predicate offense in response to a proper hypothetical question based on premises established by competent evidence." (*Valencia*, *supra*, 11 Cal.5th at p. 839.) This observation is the basis for defendant's assertion of error. Defendant notes Barrantes's opinion that the predicate offenders were members of the Broderick Boys was not given in response to a hypothetical and that it was not clear that, with respect to Robinson and Vasquez, Barrantes was referring only to admitted evidence because he referenced more than one report. With respect to the other predicate offenders, it does not appear that Barrantes was referring to any admitted evidence. Regardless, Barrantes did not relay any testimonial hearsay in violation of the confrontation clause and defendant does not direct us to any authority suggesting a different basis for concluding these alleged errors violated his rights under the confrontation clause. As such, we conclude defendant's alleged errors should be assessed for prejudice under the standard articulated in *People v. Watson* (1956) 46 Cal.2d 818. (See *People v. Jeffrey G.* (2017) 13 Cal.App.5th 501, 510 ["We evaluate prejudice resulting from the allowance of expert testimony in violation of *Sanchez* under the standard of [*Watson*, *supra*], which requires reversal if 'it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error' "].) In light of the fact competent evidence regarding the gang membership of two perpetrators of predicate offenses other than defendant was introduced, it is not reasonably probable that a result more favorable to defendant would have been reached in absence of the error.

## III. DISPOSITION

The judgment is affirmed.

/S/

_____
RENNER, J.

We concur:

/S/

_____
HULL, Acting P. J.

/S/

_____
DUARTE, J.